In the Matter of The Bohack Corporation, Debtor-in-Possession.

The BOHACK CORPORATION,
Plaintiff-Appellee,

v.

BORDEN, INC., Defendant-Appellant.

No. 991, Docket 78–5017.

United States Court of Appeals,
Second Circuit.

Argued May 25, 1978.
Decided May 7, 1979.

Edward A. Matto, Columbus, Ohio, William A. Wetzel, George E. Pataki, New York City, for defendant-appellant.

J. Stanley Shaw, Jesse I. Levine, William M. Rifkin, Garden City, N.Y., for plaintiff-appellee.

Before OAKES, Circuit Judge, BLUMENFELD * and MEHRTENS,** District Judges.

MEHRTENS, District Judge:

In this case we are confronted with the delicate task of reconciling two provisions of the bankruptcy law which appear to be at cross-purposes with each other. One provision [1] is designed to protect the interests of debtors, the other [2] is intended to safeguard the rights of creditors. In an effort to harmonize these seemingly discordant segments of the law, we reverse and remand with instructions.

### FACTS

The Bohack Corporation (Bohack) filed a petition for an arrangement with the bankruptcy court pursuant to Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701 *et seq.*, on

---

\* Hon. M. Joseph Blumenfeld, Senior United States District Judge for the District of Connecticut, sitting by designation.

\*\* Hon. William O. Mehrtens, Senior United States District Judge for the Southern District of Florida, sitting by designation.

1. Rule 11–44, Federal Rules of Bankruptcy Procedure.

2. Section 68 of the Bankruptcy Act, 11 U.S.C. § 108.

July 30, 1974. The petition was granted by order of the same date, and Bohack was continued as debtor-in-possession. 11 U.S.C. § 742. In conformance with § 314 of the Act, 11 U.S.C. § 714 [3] and Rule 11–44, Federal Rules of Bankruptcy Procedure, the bankruptcy court's order included a provision expressly staying the initiation or continuation of all suits and claims against the debtor.[4] The appellant, Borden, Inc., on November 13, 1974, filed a proof of claim for $451,198.86 representing goods sold and delivered prior to the initiation of the proceedings in arrangement.

Some two years later, Bohack, together with various other plaintiffs, filed suit in the United States District Court for the Eastern District of New York charging Borden and other major sugar refiners with violations of the Sherman Antitrust Act. Borden answered the complaint and interposed a counterclaim for the $451,198.86 originally sought under the proof of claim. Borden did not at any time during the course of this proceeding seek to obtain relief from the stay imposed by the bankruptcy court's order and Rule 11–44. On March 18, 1977, the action was transferred to the United States District Court for the Eastern District of Pennsylvania for consolidated pre-trial proceedings by the judicial panel on multi-district litigation.

Bohack moved in the antitrust action for an order dismissing Borden's counterclaim, arguing that the district court, by virtue of the Rule 11–44 stay, was without subject matter jurisdiction. In the alternative, Bohack argued that the debt underlying Borden's claim was not mutual, and thus could not be asserted as a setoff pursuant to § 68 of the Act. Borden opposed, but the court decided the motion in favor of Bohack, Borden, however, successfully moved for reconsideration.

While the issue remained *sub judice*, Bohack filed suit in the bankruptcy court seeking an order enjoining the continued prosecution of the counterclaim. The bankruptcy judge, anchoring his ruling on precepts of exclusive jurisdiction pursuant to § 311 of the Bankruptcy Act, reasoned that the antitrust court's concurrent consideration of the claim would unnecessarily fractionalize the arrangement proceeding. With the filing of the proof of claim, the court ruled, Borden consented to the bankruptcy court's exclusive, summary jurisdiction and was bound by the automatic stay embodied in Rule 11–44 and the court's separate restraining order. The bankruptcy judge further found that Borden was estopped from asserting the claim before the antitrust court.

On the basis of the bankruptcy court's decision, the district judge in the antitrust matter entered an order dismissing the counterclaim without prejudice to any rights Borden might have to appeal from the bankruptcy court's order.

The district judge below affirmed the bankruptcy court but did not rely on exclusive jurisdiction as the legal basis of his decision. The district court's ruling was primarily based upon his determination that § 68 of the Act, which permits a creditor to set off mutual debts with a debtor, is permissive in nature and subject to the discretion of the court. The district judge concluded that the bankruptcy court could, in an appropriate exercise of discretion, defer or deny a setoff on equitable grounds. He then went on to analyze the equities involved in permitting Borden's counterclaim to be interposed in the antitrust action to examine whether the denial of the counterclaim by the bankruptcy judge had been an abuse of discretion. In a thoughtful and comprehensive decision, the district judge cited the potential for delays in the antitrust litigation and the potential for complication of that already complex lawsuit and concluded that there had been no such abuse.

---

**3.** See note 7, *infra.*

**4.** Although the Federal Rules of Bankruptcy Procedure were not in effect at the time the

petition was filed, both parties and both courts below treated Rule 11–44 as having pivotal importance in this action, and we will follow suit.

Borden appeals from the decision of the district court affirming the bankruptcy court's order restraining and enjoining Borden from continuing the prosecution of its counterclaim in the antitrust litigation.

## EXCLUSIVE JURISDICTION

Bohack relies primarily on the exclusive jurisdiction approach adopted by the bankruptcy court. Section 311 of the Bankruptcy Act, 11 U.S.C. § 711, provides:

> Where not inconsistent with the provisions of this chapter, the [bankruptcy] court . . . shall . . . have exclusive jurisdiction of the debtor and his property, wherever located.

• ■ Section 311 contemplates the centralization of all matters affecting the debtor into one tribunal. *Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47 (2nd Cir. 1976). The intent and design of Chapter XI makes the need for exclusive jurisdiction compelling. Unlike ordinary bankruptcy, where liquidation is the object, the purpose of an arrangement is to revive a moribund business, not to bury it. See *Susquehanna Chemical Corp. v. Producers Bank and Trust Co.,* 174 F.2d 783 (3rd Cir. 1949). In order to achieve this goal without interference, the bankruptcy court's action must be swift and its jurisdiction unfettered.

Accordingly, the bankruptcy court herein held that it had exclusive, summary jurisdiction over Borden's counterclaim and further found that Borden consented to such jurisdiction by filing its claim.[5] The judge did not discuss the merits of Borden's counterclaim, nor indicate whether or not the setoff might be preserved within the context of the arrangement proceeding.

■ Under the circumstances of this case we do not believe that assertion of exclusive jurisdiction would be correct without first considering the equities of Borden's § 68 claim. It is unquestioned that the Chapter XI court must be assured of its ability to exercise exclusive jurisdiction in appropriate cases. However, despite dogmatic assertions that "exclusive jurisdiction means exclusive jurisdiction," *Fritz v. United States,* 535 F.2d 1192 (9th Cir. 1976) the exercise of such jurisdiction is not mandatory. The bankruptcy court must have the discretion to determine, under the particular circumstances of each case, whether it or another court is the most efficacious and equitable forum for resolution of the controversy; otherwise it becomes imprisoned within its jurisdiction.

■ The boundaries of the bankruptcy court's jurisdiction have not been rigidly delineated by Congress. There is inherent flexibility in the language of § 311 which confers exclusive jurisdiction "where not inconsistent" with the provisions of the Bankruptcy Act. The Supreme Court has counseled that the exact scope of summary jurisdiction in bankruptcy is a matter to be determined after due consideration of the structure and purpose of the Bankruptcy Act as a whole, as well as the particular provisions of the Act brought into question. *Katchen v. Landy,* 382 U.S. 323, 328, 86 S.Ct. 467, 15 L.Ed.2d 391 (1965). Accordingly, resolution of this controversy should not rest on the jurisdictional issue alone. The ramifications of Borden's alleged right of setoff must first be explored in order to determine the effect of an exercise of exclusive jurisdiction on the equities of the case.

## THE DOCTRINE OF SETOFF

The doctrine of setoff has long occupied a favored position in our history of jurisprudence. It originated in the antiquity of Roman law and was later adopted into the English legal system. See Loyd, *The Development of Setoff,* 64 U.Pa.L.Rev. 541 (1916). It was incorporated into the English bankruptcy scheme in 1705 and became a recognized doctrine of American bankruptcy law with the passage of the Act of 1800. 4 Collier on Bankruptcy ¶ 68.01 (14th

---

5. This court in *In Re Eastern Freightways, Inc.,* 577 F.2d 175 (2nd Cir. 1978), commented that in some instances the filing of a claim against a bankrupt estate constitutes implied consent to summary jurisdiction over a setoff issue.

Ed. 1975). Today, the doctrine of setoff is preserved in § 68 of the Act which provides as follows:

> In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.

■ Although proceedings in bankruptcy are equitable in nature, the dominant impulse of § 68 is inequality among creditors. *In re Applied Logic Corp.,* 576 F.2d 952 (2nd Cir. 1978). A setoff has the effect of paying one creditor more than another. Despite the preferential advantages bestowed upon certain creditors by virtue of § 68, setoffs are accepted and approved because they are based upon long-recognized rights of mutual debtors. Although § 68 is permissive rather than mandatory, the Supreme Court has held that when the statutory provision is relied upon by a creditor, it should be enforced by the court. *Cumberland Glass Manufacturing Company v. DeWitt and Company,* 237 U.S. 447, 455, 35 S.Ct. 636, 59 L.Ed. 1042 (1915).

■ Allowance or disallowance of a setoff is a decision which ultimately rests in the sound discretion of the bankruptcy court. This circuit, however, has repeatedly favored the allowance of setoffs. In *In re Applied Logic Corp., supra,* a bank was permitted to exercise its right to set off a debt owed it by the bankrupt against deposits and certificates of deposit held by the bank. Judge Friendly commented therein that

> [t]he rule allowing setoff, both before and after bankruptcy, is not one that courts are free to ignore when they think application would be "unjust." It is a rule that has been embodied in every bankruptcy act the nation has had, and creditors . . . have long acted in reliance upon it.
>
> 576 F.2d at 957–958.

■ In an earlier case Judge Friendly described an injunction against a setoff as "strong medicine." *In the Matter of Lehigh and Hudson River Railway Company,* 468 F.2d 430, 434 (2nd Cir. 1972). And see *Tyler v. Marine Midland Trust Co. of New York,* 128 F.2d 927 (2nd Cir. 1942). The policy of the Bankruptcy Act is to allow setoffs and counterclaims. *Western Land Planning Company v. Midland National Bank,* 434 F.Supp. 616 (E.D.Wis.1977). This court is reluctant to disturb this policy unless compelling circumstances require it. A decision disallowing a setoff must not be made cavalierly. The statutory remedy of set off should be enforced unless the court finds after due reflection that allowance would not be consistent with the provisions and purposes of the Bankruptcy Act as a whole.

## SETOFFS IN ARRANGEMENT PROCEEDINGS

Bohack contends that § 68 is not to be accorded the same favor in an arrangement proceeding as would be appropriate in the context of an ordinary bankruptcy case. An unqualified right of setoff in a Chapter XI proceeding might conceivably defeat the purpose of the arrangement. A setoff could deprive the debtor of all or a large part of its current assets at a time when it needs them most. *Susquehanna Chemical Corp. v. Producers Bank and Trust Co., supra.* In support of its position, Bohack relies on *Lowden v. Northwestern National Bank & Trust Co.,* 298 U.S. 160, 56 S.Ct. 696, 80 L.Ed. 1114 (1936) and *Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, 94 S.Ct. 2504, 41 L.Ed.2d 243 (1974). Both cases involved railroad reorganizations pursuant to § 77 of the Bankruptcy Act, 11 U.S.C. § 205. Reorganizations and arrangements are somewhat analogous in that the objective of both proceedings is the rehabilitation of a faltering business.

In *Lowden* the Supreme Court indicated that principles of equity demand greater flexibility in railroad reorganizations than in ordinary bankruptcy and that the rigid rule of § 68 should not control:

> . . . the trustees must have the power to gather in the assets and keep the business going. To exercise that

power, they may find it necessary to sue, and the suit may turn upon the right of setoff . . . . In a suit for such a purpose, collateral to the main proceeding and initiated at a time when the outcome of that proceeding is still unknown and unknowable, § 68 of the statute does not control the disposition of the controversy *ex proprio vigore.* It governs, if at all, by indirection and analogy according to the circumstances.

298 U.S. at 164, 56 S.Ct. at 698.

In *Baker v. Gold Seal Liquors, Inc., supra,* the Supreme Court recognized that the debtor in a reorganization must keep its precarious cash inflow sufficient for operating purposes in order to survive. Accordingly, the Court concluded that, as a general rule, setoffs should not be allowed in § 77 reorganizations.

The district judge herein adopted the reasoning of the foregoing Supreme Court decisions and, paraphrasing *Lowden,* held that to the extent that § 68 governs the course of Chapter XI proceedings, it is by analogy only, and with due regard to the totality of the circumstances surrounding the case. In our view, the district judge erred in his construction of the law. The applicability of § 68 in arrangement proceedings is determined by statute, not by analogy. Section 302 of the Act, 11 U.S.C. § 702, explicitly provides that specified portions of the Act, including § 68, are applicable in Chapter XI proceedings insofar as they are not inconsistent with or in conflict with the provisions of the chapter. To the contrary, no express approval of setoffs under § 68 appears in the statute governing § 77 reorganizations. *Baker v. Gold Seal Liquors, Inc., supra* 417 U.S. at 475, 94 S.Ct. 2504 (Mr. Justice Stewart, concurring).

Consequently, we believe that the district court may have placed undue emphasis on what Judge Friendly has described as the "vacuous pronouncement" of the *Lowden* decision. *In the Matter of Lehigh and Hudson River Railway Company, supra* at 433. In *Tyler v. Marine Midland Trust Co. of New York, supra,* we stated:

[W]ere this ordinary bankruptcy, no question of the propriety of the setoff would arise.

The question then becomes whether a different rule obtains because the debtor has proceeded under Chapter XI. . . . Nothing in Chapter XI indicates that § 68 and the right of setoff are inapplicable. . . . [the *Lowden* ] case hardly goes so far as completely to deny application of the usual rule.

128 F.2d at 928.

■ We do not mean to suggest that the right to setoff in Chapter XI proceedings is unqualified; nor are we attempting to undermine the discretion of the bankruptcy court in determining the propriety of a setoff in a particular case. We merely wish to establish a framework within which to reach that decision. A setoff in the context of a Chapter XI arrangement should not be regarded with the disfavor accorded the remedy in the railroad reorganization cases of *Lowden* and *Baker.* Rather, a bankruptcy judge should be guided by decisions of this court favoring setoffs where statutorily authorized. The test for disallowance is that suggested by § 302, *i. e.,* would application of § 68 be inconsistent with the provisions of Chapter XI?[6] The question before us on this appeal, therefore, is whether Borden's pursuit of its counterclaim in the antitrust action is inconsistent with the provisions of Chapter XI, and more specifically, with Rule 11–44.

---

6. We believe that a test paralleling the language of § 302 is preferable to the broader "totality of the circumstances" approach adopted by the district judge. He placed considerable emphasis, for example, on the fact that prosecution of Borden's counterclaim would further entangle the already complicated antitrust litigation. Although principles of comity dictate that a court carefully weigh the possible impact its decision might have on another tribunal, § 302 does not go so far as to give a bankruptcy judge the discretion to deny a setoff on the ground that its exercise might inconvenience another court. Section 302 provides only one standard for testing the applicability of § 68 in Chapter XI proceedings: inconsistency with the provisions of the chapter.

## RULE 11–44

■ Rule 11–44 provides that the filing of the Chapter XI petition shall operate as a stay of any action against the debtor or his property. Rule 11–44 supplements and reinforces the stay provisions of § 314 of the Act.[7] Prior to the enactment of Rule 11–44 a Chapter XI debtor could apply under § 314 for a discretionary order staying or enjoining suits against the debtor. Under Rule 11–44 the stay becomes automatic upon the filing of the petition. To obtain relief from the stay, a creditor may apply under Rule 11–44(d) to have such stay annulled, terminated or modified. Rule 11–44 does not, however, alter the original purpose of § 314, *i. e.*, to protect the debtor from harassment and from frustration of his rehabilitation by prejudicial dismemberment and diminution of his assets during the pendency of the Chapter XI proceeding. *Preferred Surfacing, Inc. v. Gwinnett Bank & Trust Co.*, 400 F.Supp. 280 (N.D.Ga.1975); *Teledyne Industries, Inc. v. Eon Corporation*, 373 F.Supp. 191 (S.D.N.Y.1974), aff'd *Teledyne Industries, Inc. v. Podell,* 546 F.2d 495 (2nd Cir. 1976). The applicability of § 68 in the instant case depends upon whether the counterclaim in the antitrust proceeding would defeat this purpose.

■ Where property of the debtor is in the possession of a creditor, the need to protect the debtor from an immediate exercise of a setoff is evident. In *Preferred Surfacing, Inc., supra,* for example, the debtor had a general checking account with the respondent bank. Shortly after the debtor filed its Chapter XI petition, the bank by means of setoff applied the sum on deposit against the amount of an outstanding indebtedness allegedly owed by the debtor to the bank. The bankruptcy court fully appreciated the devastating impact such a setoff could have on the arrangement proceeding and properly held the bank in contempt. In an ordinary bankruptcy, a bank may set off a deposit against an unmatured indebtedness even though done after the petition is filed. See generally, 4 Collier on Bankruptcy ¶ 68.02 (14th Ed. 1975). In a Chapter XI proceeding, however, where a business is struggling to resist bankruptcy, resort to such a unilateral, self-help remedy could thwart the arrangement entirely and push the debtor over the brink and into insolvency. Where an immediate setoff would seriously threaten the continued vitality of the debtor, the setoff should be deferred.

■ This seemingly harsh course of not permitting a creditor to exercise a right that would have been available in ordinary bankruptcy may be justified on the ground that the immediate sacrifice can be compensated, if the proceeding is successful, by appropriate recognition upon confirmation of the plan. *In Re Yale Express Systems, Inc.,* 362 F.2d 111, at 116. In some instances, the setoff may ultimately be denied, but at the outset of the proceeding the deferral of the setoff amounts to little more than a provisional sequestration to give protection for the future. *Lowden v. Northwestern National Bank & Trust Co., supra.*

■ Rule 11–44 also reinforces the exclusive jurisdiction of the bankruptcy court by protecting the debtor from the harassment of lawsuits initiated in other forums. If the debtor were subject to suit in various courts without restriction, the mere costs of defending itself could be debilitating, and a judgment could be fatal. See *Fidelity Mortgage Investors, supra.* Rule 11–44 facilitates an expeditious and economical arrangement by precluding fractionalization and thereby consolidating most claims within the insular proceedings in the Chapter XI court.

## DISCUSSION

The guidelines for determining whether a setoff is inconsistent with Chapter XI are far from definitive:

> of the debtor, and may, upon notice for cause shown, enjoin or stay until final decree any act or the commencement or continuation of any proceeding to enforce any lien upon the property of a debtor.

7. Upon the filing and acceptance of a chapter XI petition, the bankruptcy court may, pursuant to § 314,

> . . . enjoin or stay until final decree the commencement or continuation of suits other than suits to enforce liens upon the property

In other words, sometimes the setoff rule of Section 68 is to be applicable; at other times it is not. Whether it is or not depends upon the equities of the situation.

*Susquehanna Chemical Corp. v. Producers Bank & Trust Co.*, 174 F.2d 783, 787 (3rd Cir. 1949).

Our review of the equities of this situation persuades us that Borden's pursuit of its counterclaim in the antitrust litigation would not defeat the policies and purposes of Chapter XI and Rule 11–44. Initially, we must distinguish this case from the bulk of the cases arising under Rule 11–44 because here the antitrust lawsuit was initiated by Bohack. There is no issue, therefore, of an attempt by Borden to harass Bohack. Rule 11–44 was designed in part to protect debtors from legal harassment and in general contemplates a situation where a creditor institutes a suit against the debtor. The purpose of the rule is the protection of the debtor, but when the debtor is in the position of assailant rather than victim, the potential for abuse of that purpose is manifest. Under Rule 11–44(d) suits against the debtor are prohibited absent leave of the bankruptcy court; however, Rule 610, Federal Rules of Bankruptcy Procedure, permits the debtor to file suit in any forum without first securing authorization from the bankruptcy judge. Conceivably, an unscrupulous debtor could take advantage of this statutory imbalance and transform Rule 11–44 into an instrument of harassment by filing a proliferation of questionable lawsuits. Such suits could not only impede the progress of the arrangement and keep creditors waiting interminably for a confirmation, but the costs of prosecution would further deplete the assets of the estate. The threat of setoff, however, would discourage such abuses.

We are not intimating that Bohack was guilty of bad faith in initiating the antitrust action. We are, however, cognizant of the precedential import of our rulings and must be cautious to avoid a decision which could convert Rule 11–44 from a shield into a weapon. Where a debtor institutes a lawsuit and then invokes the protection of Rule 11–44 on a counterclaim, the situation warrants a very thoughtful scrutiny. Just as the court has discretion to deny setoffs in appropriate cases, so the court has an equitable duty to grant a setoff when a debtor moves outside the confines of the bankruptcy court in an attempt to reap the benefits but circumvent the burdens in another forum. *Binnick v. Avco Financial Services of Nebraska, Inc.*, 435 F.Supp. 359 (D.Neb.1977).

Furthermore, this is not a case in which Rule 11–44 should be invoked in order to spare the debtor the expense of defending itself in litigation. Bohack initiated the costly antitrust proceeding. It would be patently inequitable to deny Borden's counterclaim in order to reduce Bohack's legal fees and costs.

The same reasoning applies to arguments regarding judicial economy and interference with the administration of the debtor's estate. The district judge feared that concurrent consideration of Borden's claim could impede final acceptance of a Chapter XI plan and that such inexcusable delay would be a detriment to the remaining creditors. It would be far more detrimental to creditors to proceed to confirmation without taking into account a potential recovery on Bohack's antitrust claim. Bohack has included pending litigation in the assets of its estate. Creditors would be entitled to share in the recovery in the event of Bohack's ultimate success in the antitrust lawsuit. It is possible, even if it is not likely, that the pending antitrust suit, an asset, would be distributed among the creditors as part of an arrangement. An arrangement is more likely to be based on payments of cash or notes from the debtor. Should such an arrangement be proposed, the creditors will be able to vote on whether to accept it or not. Their vote may be influenced by their estimate of what value there may be in Bohack's antitrust suit. Should they decide to accept an arrangement without having that antitrust claim assigned to them, then Borden would be bound. In that case, the assertion of its counterclaim in the anti-

trust suit could be stricken on a motion for summary judgment supported by a certified copy of the arrangement. In the meantime, there is no reason why Borden should be required to elect or why a stay should be continued.

Whether the creditors want to keep Bohack alive as a going concern is up to them to determine, and in that decision Borden will have no greater or lesser right to a voice than any other creditor. Should the creditors decide to throw Bohack into bankruptcy, then each of them would presumably receive a proportionate share in the antitrust claim. The effect to be given to Borden's claim as a creditor against the trustee would be determined under the ordinary rules of bankruptcy. It appears that this would be simply an unsecured claim.

In affirming the bankruptcy court's order enjoining prosecution of Borden's counterclaim, the district judge commented that Borden could obtain a setoff in the context of the arrangement and that Borden's recovery would merely be delayed.[8] The procedure whereby Borden might accomplish this result was not specified.

■ We find that the equities in this case are weighted in Borden's favor and that it was an abuse of discretion to enjoin the counterclaim. Borden should be afforded the opportunity to pursue its setoff in a plenary proceeding before the antitrust court.[9] On remand, the bankruptcy judge must be given the latitude to weigh "the best interests of the creditors," 11 U.S.C. § 766(2), and to proceed, subject to the provisions of this opinion, as far as possible with confirmation of a plan or with liquidation.

The judgment is reversed and the cause remanded to the district court with instructions to remand to the bankruptcy judge with instructions to proceed in accordance with this opinion.

Reversed and remanded with instructions.

---

8. Rule 11-44 is a rule of procedure; it cannot abridge or modify any substantive right. 28 U.S.C. § 2075; *In re Williams*, 422 F.Supp. 342, 344 (N.D.Ga.1976). It can, however, operate to defer the exercise of a given right, particularly where equity requires it. *See Preferred Surfacing, Inc. v. Gwinnett Bank & Trust Co.*, 400 F.Supp. 280 (N.D.Ga.1975).

9. Under § 68 Borden's right to a setoff in the bankruptcy proceeding would not mature un-

less and until Borden and Bohack become mutual debtors. Their status as mutual debtors cannot be determined until the conclusion of the antitrust case. It is almost a certainty that the arrangement proceeding will terminate before the antitrust suit. An arrangement is intended to proceed swiftly, simply, and efficiently, Fed.R.Bankr.P. 903, whereas antitrust cases are notoriously lengthy and tortuously complex.