**Hillard T. ROACH and Equestrian Acres Development Corporation, Appellants,**

v.

**The FIRST NATIONAL BANK OF ANCHORAGE and Alaska Title Guaranty Company, Appellees.**

**No. 4845.**

Supreme Court of Alaska.

Nov. 20, 1981.

A. Lee Petersen, A. Lee Petersen, Inc., Anchorage, for appellants.

John R. Beard, Anchorage, for appellees.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.*

## OPINION

RABINOWITZ, Chief Justice.

In this appeal we are confronted with a novel question: whether the superior court was divested of jurisdiction to enter summary judgment against appellants Hillard Roach and Equestrian Acres by virtue of their filing, in federal district court, Chapter XI reorganization petitions under the federal bankruptcy laws.

Between October 1976 and April 1977, the First National Bank of Anchorage loaned Roach a total of $253,246.48 to finance Roach's costs of developing 160 acres of land near Palmer as a residential subdivision. Payment of the loan was secured by the land under a deed of trust Roach executed in favor of the bank as beneficiary and Alaska Title Guaranty Company as trustee.

Roach was unable to make the loan payment due on September 15, 1977. In October Alaska Title Guaranty Company began the process of giving notice that it would sell the real property to satisfy the debt owed to the bank. The trustee's sale was scheduled to be held on January 24, 1978. On that day, Roach brought an action in superior court in Anchorage to enjoin the sale. He also sought damages based upon various allegations of misconduct by the bank. Roach alleged that the bank had caused his non-payment, that the trustee's notice had been defective, and that a trustee's sale would be unconstitutional and inequitable.

The bank and the title company were temporarily restrained from selling the land, and a hearing on Roach's motion for a preliminary injunction was set for February 21. At that hearing, the Equestrian Acres Development Corporation was joined as a plaintiff.[1] Following the hearing, the preliminary injunction was granted, enjoining the sale. After this, however, Roach and the corporation did nothing to prosecute their suit, and on several occasions interfered with the bank's discovery efforts. Finally, in May 1979, the bank moved for summary judgment. A hearing on the motion was scheduled for June 19.

On the day of the scheduled hearing, both Roach and Equestrian Acres filed petitions for reorganization in federal district court pursuant to Chapter XI of the federal bankruptcy laws.[2] Notwithstanding their claim that this filing deprived the superior court of jurisdiction over the pending suit, Judge Ripley, on July 4, 1979, granted the bank's summary judgment motion to dissolve the injunction and to deny damages to Roach. Subsequently the bank was awarded $3,877 in costs and $10,000 in attorney's fees. Roach[3] has appealed, on jurisdictional grounds, both the entry of summary judgment and the award of costs and fees. We hold that the entry of summary judgment lifting the injunction was improper and that the denial of damages was proper.

■ The federal rules of bankruptcy procedure establish limits on state court jurisdiction in proceedings in which one party is a debtor who has filed a Chapter XI bankruptcy petition. Rule 11–44(a) sets out four

---

* Dimond, Senior Justice, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

1. Equestrian Acres, a corporation whose president is Roach, was apparently set up by Roach to assist in the development of his land. He is a major stockholder, although the record does not specify whether he is the sole stockholder. The corporation was brought into the suit as a plaintiff after the bank raised the question of who owned the land at issue, Roach or the corporation.

2. These petitions were subsequently dismissed on October 15, 1979.

3. Any further references in this opinion to Roach refer to both Roach personally and to the corporation, Equestrian Acres.

situations in which a stay is granted after the filing of a Chapter XI petition: (1) commencement or continuation of any court proceeding against the debtor, (2) enforcement of a judgment against the debtor, (3) any act or commencement or continuation of any court proceeding to enforce any lien against his property, and (4) commencement or continuation of any court proceeding, except a case under Chapter X, for the purpose of debtor rehabilitation or estate liquidation.[4] Situation one does not apply because the superior court action to enjoin the sale and to seek damages was brought by the debtor, Roach. Situations two and four are inapplicable to the factual setting of this dispute. Situation three, however, cannot be so easily dismissed.

Upon the filing of a Chapter XI petition, a stay is in effect against "any act or . . . continuation of any court proceeding to enforce any lien against [the debtor's] . . . property . . . ." The word "lien" is to be broadly interpreted:

> The term 'lien' is used in this Rule [11–44] to indicate a consensual security interest in personal or real property, a lien obtained by judicial proceedings, a statutory lien, or any other variety of charge against property securing an obligation.

Advisory Committee's Note to Rule 11–44 (West 1977). Under the deed of trust, the trustee's instructions required it to sell the property which is the subject of the trust if Roach failed to repay the loan from the bank. This deed of trust is a variety of charge against property securing an obligation. A deed of trust contemplates a nonjudicial foreclosure under the terms of trust. AS 34.20.070. When the trustee commenced foreclosure on Roach's property, Roach's only available course to avoid foreclosure was to move for an injunction. The bank's motion for summary judgment was designed to lift the injunction and allow the foreclosure sale to proceed. The summary judgment thus falls within the ambit of situation three: "any act . . . to enforce any lien against his property."

This interpretation is consistent with the purpose of the Bankruptcy Act. The object of Chapter XI proceedings is "the rehabilitation of a faltering business." *Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1165 (2d Cir. 1979). To achieve this objective, Congress enacted the following provisions of the Bankruptcy Act of 1898: § 11(a) (formerly 11 U.S.C. § 29(a), presently codified at 11 U.S.C. § 362); § 311 (formerly 11 U.S.C. § 711, omitted in Bankruptcy Reform Act of 1978); § 314 (formerly 11 U.S.C. § 714, presently codified at 11 U.S.C. § 362). Section 311 gave the bankruptcy court exclusive jurisdiction over the debtor and his property so that one court alone could orchestrate the reorganization. With more than one court involved, a coordinated plan would not be possible. Sections 11(a) and 314 provided for stays of proceedings "to prevent interference with, or diminution of, the debtor's property during the pendency of the Chapter XI proceeding." *Teledyne Industries, Inc. v. Eon Corp.*, 373 F.Supp. 191, 203 (S.D.N.Y.1974), *aff'd sub nom. Teledyne Industries, Inc. v. Podell*, 546 F.2d 495 (2d Cir. 1976). *See Atlantic Richfield Co. v. Good Hope Refineries, Inc.*, 604 F.2d 865, 868–70 (5th Cir. 1979) (*in rem* action, in admiralty, on surety bond allowed to go forward on ground that res not property of debtor, thus failure to stay not inconsistent with purpose of bankruptcy proceedings); *Bohack*, 599 F.2d at 1167–68 (setoff of mutual debts not inconsistent

---

**4.** Rule 11–44(a) provides:

A petition filed under Rule 11–6 or 11–7 shall operate as a stay of the commencement or the continuation of any court or other proceeding against the debtor, or the enforcement of any judgment against him, or of any act or the commencement or continuation of any court proceeding to enforce any lien against his property, or of any court proceeding, except a case pending under Chapter X of the Act, for the purpose of the rehabilitation of the debtor or the liquidation of his estate.

Bankruptcy Rule 11–44(a) (West 1977).

In 1978 Congress enacted the Bankruptcy Reform Act of 1978. Pub.L.No. 95–598, 92 Stat. 2549 (1978). The effective date of the act was October 1, 1979. *Id.* § 402, 92 Stat. 2682. Because the relevant events in this case occurred prior to that date, the pre-existing code and rules are applied.

with policy of Rule 11–44, therefore permissible). Rule 11–44 "supplements and reinforces the policy of §§ 11(a), 311 and 314," Advisory Committee's Note to Rule 11–44 (West 1977), with a stay which "becomes automatic upon the filing of the petition." *Bohack*, 599 F.2d at 1167. The policy of conservation of the debtor's assets would be thwarted by allowing entry of the summary judgment on the bank's behalf. If summary judgment were allowed and the injunction were lifted, foreclosure would proceed, thus removing a substantial asset from the debtor Roach's estate.

Rule 11–44 also contemplates a broader application to protect "the debtor from the harassment of lawsuits initiated in other forums. If the debtor were subject to suit in various courts without restriction, the mere costs of defending itself could be debilitating . . . ." *Bohack*, 599 F.2d at 1167. In this action, the motion for summary judgment required an expenditure of Roach's assets to challenge the motion, contrary to the stated policy.

The opposing argument to this application of Rule 11–44 is that Roach brought it upon himself. The bank points out that the policy of Rule 11–44 is to prevent harassment of the debtor. It argues that Roach has not been harassed, since he initiated the suit, and, therefore, that Rule 11–44 should not be applied. *See Bohack*, 599 F.2d at 1168; *First Wisconsin National Bank v. Grandlich Development Corp.*, 565 F.2d 879, 880 (5th Cir. 1978) (per curiam).

In *Bohack*, the debtor corporation filed an antitrust suit against its creditor as a counterclaim to the creditor's claim. The court held that since the debtor filed the counterclaim, it did not fall within the automatic stay provisions of Rule 11–44(a). Since the debtor had initiated the counterclaim, the court reasoned, it was not being harassed, and thus the policies of Rule 11–44(a) did not favor a stay: "Conceivably, an unscrupulous debtor could take advantage of this statutory imbalance and transform Rule 11–44 into an instrument of harassment by filing a proliferation of questionable lawsuits." *Bohack*, 599 F.2d at 1168. Filing

suit to enjoin a non-judicial foreclosure, however, is not the type of abuse by the debtor that the *Bohack* court wanted to avoid. Further, the underlying basis of that decision was the strong policy favoring setoffs. *Id.* at 1165. We conclude that the policies in operation in *Bohack* have no application in this action.

In *First Wisconsin National Bank v. Grandlich Development Corp.*, 565 F.2d 879 (5th Cir. 1978) (per curiam), the defendant debtors filed a counterclaim charging usury. As in *Bohack*, Rule 11–44(a) was not applied because the counterclaim was not a suit against the debtor, and thus the proceeding was not stayed. The facts of *First Wisconsin*, however, like those of *Bohack*, are not helpful to a resolution of the case at bar, since the third situation of Rule 11–44(a) could not reasonably be applied to either of those cases.

A fairer characterization of the relationship between Roach and the bank is that the nonjudicial foreclosure constituted harassment of Roach. If the bank had a mortgage and was required to judicially foreclose, and Roach then defended on the same grounds that he used for his motion to enjoin, there would be no question that it would be a proceeding against the debtor (situation one of Rule 11–44) and also a proceeding to enforce a lien (situation three of Rule 11–44). A trust deed is not substantively different from a mortgage, *In re Sherman*, 12 F.Supp. 297, 298 (W.D.Va. 1935), except that a trust deed contemplates a nonjudicial foreclosure. Whether the foreclosure is nonjudicial or judicial, the debtor is still harassed. Thus, the automatic stay of Rule 11–44(a) applies to proceedings brought by a debtor to preclude a nonjudicial foreclosure.

The prevailing rule is that judgments entered after the automatic stay provision of Rule 11–44(a) is effective are null and void. *In re Sarno*, 23 Collier Bankr. Cas. 151, 155 (E.D.N.Y.1980); *In re Chitwood*, 1 B.R. 415, 418 (Bkrtcy.W.D.Va.1979). *See In re Seafarer Fiberglass Yachts, Inc.*, 1 B.R. 358, 361–64 (Bkrtcy.E.D.N.Y.1979).

Thus, the portion of the summary judgment dissolving the injunction, and the award of costs and attorney's fees relating thereto, are void for lack of jurisdiction.[5]

■ The next question is whether the summary judgment dismissing Roach's claims for breach of contract, negligence, and defamation is subject to the same jurisdictional defect. This portion of Roach's superior court lawsuit does not fall within any of the four situations in which Rule 11–44(a) requires a stay. Situations one and two apply to actions against the debtor, while situation four applies to a rehabilitation; those provisions are inapplicable to the facts of the present case. Situation three applies to the enforcement of a lien. Unlike the injunction, Roach's contract and tort claims more closely resemble a setoff or counterclaim to the lien than a defense to enforcement of the lien. In *First Wisconsin*, 565 F.2d 879, it was held that the court had jurisdiction over such counterclaims. Thus, Rule 11–44(a) does not stay this portion of the summary judgment.

■ Roach, however, claims that Bankruptcy Rule 610, made applicable to Chapter XI proceedings by Rule 11–57 temporarily deprived the superior court of jurisdiction. Rule 610 reads:

> The trustee or receiver may, with or without court approval, prosecute or enter his appearance and defend any pending action or proceeding by or against the bankrupt, or commence and prosecute any action or proceeding in behalf of the estate, before any tribunal.

Bankruptcy Rule 610 (West 1977). Roach cites the commentary to Rule 11–57 found in 14 J. Moore, *Collier on Bankruptcy* ¶ 11–57.02, at 11–57–4 (14th ed. 1976):

> In respect of pending actions in which the debtor is plaintiff, the debtor in possession has three options: (1) it may intervene and continue the suit; (2) it may consent to continuation of the suit by the debtor for the benefit of the estate, some-

thing more likely in a bankruptcy where the trustee and the bankrupt are separate entities than in the Chapter XI context where the debtor is basically the same as the debtor in possession save for the fact that for some purposes there is a change in the entity from the legal standpoint rather than from the real one; (3) prosecution of the suit may be declined.

Based on the rule and this commentary, Roach asserts that any action in the suit is halted until the debtor in possession (in this case Roach himself, as there is no trustee or receiver in Chapter XI actions) positively manifests a desire to continue prosecution of the suit.

Although we have found no reported case on this point, we reject Roach's assertion. We simply do not believe that the language of Rule 610, or the commentary in *Collier*, gives a Chapter XI plaintiff veto power over the proceedings in that plaintiff's own suit. Rule 610 gives the debtor in possession the right to intervene in a pending action, but nothing in that rule requires that proceedings be held in abeyance while the debtor reaches a decision. The right to decline mentioned in *Collier* refers only to the right to decline to initiate motions and proceedings, and not to any right to prevent rulings on opposition motions.

These interpretations follow the decision in *First Wisconsin*, 565 F.2d at 880. There the debtor was the defendant asserting a usury counterclaim, a situation in which the Rule 610 analysis urged by Roach would have denied the trial court the jurisdiction to dismiss the counterclaim. Without mentioning Rule 610, the Fifth Circuit held that the trial court had jurisdiction. We also note that our interpretation is consistent with cases which have held that claims by debtors are allowed to continue even if the debtor in possession or the trustee does not act. *Owens v. Automobile Recovery Bureau, Inc.*, 544 S.W.2d 26, 33–34 (Mo.App. 1976); *Smith v. Dial Finance Co.*, 85 Nev.

---

5. Our subsequent discussion concerning the award of attorney's fees and costs relating to Roach's contract, negligence, and defamation claims furnishes an additional ground for va-

cating the superior court's award of attorney's fees and costs as they pertain to the injunction proceeding.

650, 461 P.2d 856, 856–57 (1969). Thus the portion of the summary judgment denying Roach's claims for breach of contract, negligence and defamation is valid.

■ Additionally, we hold that the superior court's award of $14,000 in costs and attorney's fees to the bank, to the extent related to the contract, negligence, and defamation claims for damages, was erroneous. Bankruptcy Rule 11–44(a) by its terms stays "the commencement or the continuation of any court or other proceedings against the debtor, or the enforcement of any judgment against him."[6] Thus the fact that the bank's application for costs and attorney's fees was part of the action originally instituted by Roach against the bank for contract, negligence, and defamation damages is not dispositive of the question whether the rule operated to stay the superior court from awarding costs and attorney's fees against the debtor.

In terms of the policies underlying the automatic stay provisions of the bankruptcy act, we see no reason to treat an application for attorney's fees and costs, here totalling $14,000, any differently from an independent claim against the debtor for $14,000. Furthermore, we think allowing entry of judgment for costs and attorney's fees against the debtor is inconsistent with the language of Rule 11–44(a). The text of the rule contemplates that it is not just enforcement which is stayed, but also the commencement or continuation of proceedings leading to a judgment against the debtor.[7] Thus we conclude that the superior court's award of attorney's fees and costs to the bank was error and therefore must be vacated.[8]

AFFIRMED in part, REVERSED in part.

COMPTON, J., not participating.

CONNOR, Justice, dissenting in part.

I agree with most of the majority opinion. I disagree as to the holding concerning the award for costs and attorney's fees to the bank.

We should not set aside the superior court's award for costs and attorney's fees to the extent that those items are related to the contract, negligence, and defamation claims. As to those claims, I agree with the bank that its application for costs and fees as a prevailing defendant should not be regarded as the "commencement or the continuation of any court or other proceeding against the debtor" within the meaning of Bankruptcy Rule 11–44(a). These claims were brought *by* the debtor, not *against* him. The denial of these claims was quite proper. The award of costs and attorney's fees is merely a concomitant of the denial of those claims.

---

6. For the text of Rule 11–44(a), see note 4 *supra*.

7. Support for our conclusion is found in the following quote from 14 J. Moore, Collier on Bankruptcy ¶ 11–44.02, at 11–44–7 (14th ed. 1976):

> The automatic stay which thus becomes operative upon the filing of the Chapter XI case is framed in language which affords the *broadest possible scope.* While Section 314 empowers the court to stay the commencement or continuation of suits, Rule 11–44(a) operates *to* stay the commencement or continuation *of any court or other proceeding, thus indicating the inclusion of a proceeding which may not strictly be denominated as a suit but which may be nonetheless operative as against the debtor or its property.* A typical example would be a pending arbitration. See ¶ 11–44.02[3], *infra.* Rule 11–44(a), by its use of all inclusive terms, stays also the

> enforcement of any judgment which might have been procured against the debtor prior to the filing of the Chapter XI petition. [Emphasis furnished.]

8. We note that the bank sought relief from the automatic stay and that the federal district court granted the requested relief on April 21, 1980. Roach did not appeal this decision, but he later filed a motion under Fed.R.Civ.P. 60(b) to set aside the order granting relief from the stay. Roach's motion was denied, and the denial was affirmed by the Ninth Circuit.

Although the federal district court's order granting the bank relief from the automatic stay did not retroactively restore the superior court's jurisdiction, once relief was granted the superior court was again empowered to consider the bank's motions for summary judgment and for costs and attorneys' fees.

The order of the bankruptcy court made it clear that the bank was by law precluded from enforcing its judgment until the resolution of the Chapter XI proceedings. Thus I find nothing in the award of costs and attorney's fees which in any way frustrates the purposes underlying the bankruptcy laws.

I would simply remand the costs and attorney's fees question for a determination of how much of the $14,000 award was attributable to the three claims in question.

BURKE, Justice, dissenting.

I dissent.

The majority maintains that Roach's suit for an injunction was stayed by Rule 11–44 as an act to *enforce* a lien. To be more specific, the majority treats the bank's summary judgment motion as an act to enforce the trust deed against Roach's property. I disagree. The summary judgment motion by the bank is simply a *defense* to Roach's suit against the bank. The bank is asking for no affirmative relief; its summary judgment motion simply seeks the *dismissal* of Roach's claim. An act to *enforce* the lien would be to proceed with the trust deed sale.

The weakness in the majority's position is amply demonstrated by considering the situation that would result if Roach chose to pursue his suit for a permanent injunction on the merits. The automatic stay would not stop Roach from seeking such relief, but under our holding the bank would be prevented from defending itself.

I agree with the conclusion that the claims for damages are not stayed, which only adds support to the proposition that the injunctive action was not stayed, since the underlying causes of action supporting the injunction and damages claims are basically the same.

Finally, I would hold that the award of attorney's fees was proper. This is not a continuation of a court proceeding against the debtor. Rather it is an award of costs in an action brought *by* the debtor and continued on *behalf* of the estate. Since the judgment on the action comes *after* the filing of the petition, it is an action by the "debtor in possession" and would be analogous to an action by the trustee where an award of costs clearly would be proper against the trustee if he lost. By bringing the action, the debtor, as the "debtor in possession," is affirmatively committing the estate to pay the costs of the action should the same be unsuccessful.

In conclusion, I believe the trial court's decision should be affirmed. The bank's motion for the dismissal of Roach's suit was not an act or proceeding to *enforce* a lien, but simply a matter of defense. Also, no part of the action was an action *against* the debtor, including the award of costs and attorney's fees which were incurred by the "debtor in possession."