## In re REVERE COPPER AND BRASS, INC., Debtor.

### Bankruptcy Nos. 82 B 12073 to 82 B 12086.

United States Bankruptcy Court, S.D. New York.

Aug. 23, 1983.

---

Weil, Gotshal & Manges, Cahill, Gordon & Reindel, New York City, for Revere Copper and Brass; Stephen Karotkin, Mary Rose, Thomas R. Jones, New York City, of counsel.

Herbert S. Sanger, Jr., Gen. Counsel, James E. Fox, Assoc. Gen. Counsel, Robert C. Glinski, Edwin W. Small, Knoxville, Tenn., for Tennessee Valley Authority; Richard Lieb, Kronish, Lieb, Shainswit, Weiner & Hellman, New York City, of counsel.

Wachtell, Lipton, Rosen & Katz, New York City, for the Creditors' Committee; Stewart E. Tabin, New York City, of counsel.

Anderson, Russell, Kill & Olick, P.C., New York City, for Equity Committee; New York City, Robert M. Miller, New York City, of counsel.

## DECISION AND ORDER ON DEBTORS' MOTION TO MODIFY THE AUTOMATIC STAY

PRUDENCE B. ABRAM, Bankruptcy Judge.

This matter comes before the court on the motion of Revere Copper and Brass, Incorporated ("Revere") seeking an order modifying the automatic stay to permit determination of the validity of a certain contract in an action currently pending in the United States District Court for the Northern District of Alabama captioned *Revere Copper and Brass Incorporated v. Tennessee Valley Authority,* Cv. 82–M–5412MW (the "District Court Action") but not to permit determination of the defendant's counterclaim. The defendant in that action, Tennessee Valley Authority ("TVA") has opposed Revere's motion. The Equity Securityholders' Committee supported Revere's motion at oral argument on the motion on May 11, 1983. For the reasons set forth below,[1] this court concludes that further litigation of the TVA counterclaim in the District Court Action should be stayed

1. This opinion shall constitute findings of fact and conclusions of law.

but that all proceedings necessary to determine the validity of the 1980 contract should go forward in the District Court Action.

## THE FACTS

The factual background pertinent to this motion is the following: In April, 1969 Revere and TVA entered into a ten-year contract pursuant to which TVA agreed to supply electric power to Revere's aluminium reduction plant and aluminium sheet mill located near Scottsboro, Alabama. This 1969 contract provided for negotiation in good faith of the terms and conditions of a new power supply contract at the end of the ten-year term. On December 3, 1980, Revere entered into a new ten-year supply contract with TVA. It is this 1980 contract and the circumstances of its negotiation that form the basis of the District Court Action.

According to Revere's complaint in that action, prior to the expiration of the 1969 contract, Revere and TVA entered into negotiations for a new contract. TVA offered a ten-year contract, cancellable upon five years' notice. Revere proposed a one year extension in order to enable it to obtain justification for a more favorable rate because of its use of electricity as part of its manufacturing process and to analyze any new TVA rate structure resulting from the cost study TVA was required to submit pursuant to the Public Utility Regulatory Policies Act of 1978, 16 U.S.C. § 2601 *et seq.* (the "PURPA Study").

During the negotiations, Revere alleges that it was informed by TVA that the cost for a one year extension of the contract would exceed Revere's ten-year contract rate by approximately 20% and moreover that it was advised that the PURPA Study was not then available. Revere is apparently wholly dependent on TVA for electrical power. Its complaint alleges that "relying upon TVA's representation and having no other choice, Revere acceded to TVA's demand for a ten-year contract, dated December 3, 1980, subject to cancellation upon five-years' notice." (Complaint at ¶ 13).

In June 1982 Revere obtained a copy of the PURPA Study. It is Revere's position that this study indicates that the rate for a one-year contract at TVA's short term marginal cost would have been lower, not higher, than the rate under the long term rate fixed in the 1980 contract. Revere further maintains that the results of PURPA Study were known to TVA at the time of Revere's request for the study.

On July 14, 1982 Revere instituted the District Court Action seeking a judgment declaring the 1980 contract invalid, void, and unenforceable in that it was procured by unlawful means in violation of the Tennessee Valley Authority Act of 1933 and Section 3 of Article IV of the U.S. Constitution and of Revere's rights protected by the Fifth and Ninth Amendments of the Constitution and applicable common law (Complaint at ¶ 16). TVA's answer to the complaint asserts a number of defenses and also asserts a counterclaim. The substance of the counterclaim is that Revere has refused to pay the full bills specified in the 1980 contract since June 1982 and that $3,110,-905.21 was due to TVA from Revere for that reason as of the time the answer was filed and judgment is sought for that amount and all additional amounts coming due not paid. On or about October 4, 1982 TVA filed a motion in the District Court Action for summary judgment seeking a dismissal of Revere's complaint and a grant of judgment in TVA's favor on the counterclaim. On or about October 15, 1982 Revere filed a cross-motion for summary judgment seeking a judgment declaring the 1980 contract invalid and denying TVA's motion.

Prior to oral argument or decision on the summary judgment motions and on October 27, 1982, Revere filed a petition in this court for reorganization under Chapter 11 of the Bankruptcy Code. Revere is continuing to operate its business as a debtor-in-possession. Due to the Chapter 11 filing, the District Court postponed oral argument on the two summary judgment motions which had been scheduled for December 3, 1982.

On January 13, 1983 Revere sent a letter to the judge presiding over the District

Court Action requesting that the court schedule oral argument on Revere's motion for summary judgment and on that part of TVA's motion dealing with the validity of the 1980 contract. The letter stated that the automatic stay precluded prosecution of the counterclaim. In response, on February 16, 1983 TVA wrote the District Court strongly opposing any bifurcation of the District Court Action. The District Court responded by letter on February 22, 1983 as follows:

"After considering the issues discussed in your letters, it is my decision to continue the stay and apply it not only to the TVA counterclaim, but to the complaint by Revere Copper. This being true, there is no need for another hearing and no need for another order. If and when the Bankruptcy Court should release the stay both as to the complaint and the counterclaim they will proceed to trial here. Otherwise, all issues will remain with the Bankruptcy Court."

Shortly thereafter, Revere filed a formal motion asking the court to schedule a hearing for oral argument and for decision on its pending motion for partial summary judgment which was denied on February 24, 1983.

Thereafter and on March 3, 1983, TVA filed a petition for writs of prohibition and mandamus with the United States Court of Appeals for the Second Circuit precluding the United States District Court and the United States Bankruptcy Court for the Southern District of New York from exercising jurisdiction over Revere's Chapter 11 case or any proceedings therein. TVA's petition was based on an assertion that the Emergency Rule adopted by the United States District Court for the Southern District of New York in late December, 1982 could not and did not cure the constitutional defect in the structure of the bankruptcy court system created by the expiration of the stay of effectiveness on December 24, 1982 of the decision of the United States Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d

598 (1982). TVA thereafter on or about April 7, 1983 filed a motion seeking to dismiss the petition for the writs without prejudice on the basis that it had determined that it could pursue its rights and claims against Revere by other means. TVA's motion for withdrawal without prejudice expressly sought to preserve the jurisdictional issue. Revere opposed the dismissal without prejudice because TVA would be free to attack the jurisdiction of the Bankruptcy Court at some later date and thus undermine Revere's reorganization. Without comment, the Second Circuit granted TVA's motion for dismissal without prejudice shortly thereafter.

Thereafter and on April 14, 1983, Revere filed the present motion seeking to modify the automatic stay to allow the issues as to the validity of the 1980 contract to go forward in the District Court Action but continuing the stay as to the TVA's counterclaim for the unpaid charges.

### DISCUSSION AND CONCLUSIONS OF LAW

At the outset, it is noted that Revere's characterization of the requested relief as a modification of the automatic stay is perhaps inappropriate since the relief requested is in the nature of a request for a declaratory judgment as to the effect of the automatic stay and for a specific order and stay if the automatic stay does not in fact provide the desired result of continuing the main action while enjoining the prosecution of counterclaim. The automatic stay imposed by Bankruptcy Code Section 362, 11 U.S.C. § 362, provides in relevant part that the stay is applicable to

"(1) The commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
" * * *

"(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title; * * *"

■ This action was commenced by Revere and as such is not affected by the automatic stay. *See e.g., Assoc. of St. Croix Condo. Owners v. St. Croix Hotel,* 682 F.2d 446, 448 (3d Cir.1982) ("Section 362 by its terms only stays proceedings *against* the debtor."). However, TVA's counterclaim does involve a matter which could have been the subject of a separate proceeding against the debtor that was or could have been commenced before the filing of the Chapter 11 petition to recover a claim against the debtor and it is an act to assess a claim against the debtor. However, this is not a motion seeking to punish by contempt a violation of the automatic stay contained in Bankruptcy Code § 362. It is therefore not necessary for the court to reach the question of the effect of the automatic stay on a counterclaim, involving as it does questions of compulsory and permissive counterclaims and bankruptcy law, because of the powers afforded to the court under Bankruptcy Code § 105 to fashion appropriate relief.

The issue before this court is whether the District Court Action should be bifurcated by staying TVA's counterclaim while the main action on the validity of the 1980 contract proceeds. TVA argues that bifurcation of the District Court Action is inappropriate because it will somehow be prejudiced if the action continues only in part. Furthermore, TVA urges the District Court has already ruled on the issue and therefore Revere is precluded from seeking the requested relief in this forum. Both arguments are rejected.

I. *TVA Will Not Be Prejudiced by Bifurcating the Claims*

It is well established that the federal courts "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim. . . ." F.R.Civ.P. 42(b). *See Filtrol Corp. v. Kelleher,* 467 F.2d 242, 246 (9th Cir.1972), *cert. denied,* 409 U.S. 1110, 93 S.Ct. 914, 34 L.Ed.2d 691 (1973). The separation for trial of the issues of liability and damages often results in economy and efficiency and is frequently utilized in litigation of antitrust issues and negligence suits. *Notes of Advisory Committee on Rules,* F.R.Civ.P. 42(b); *Gutor International AG v. Raymond Parker Co., Inc.,* 493 F.2d 938, 947 (1st Cir.1974); *Rickenbacher Transportation, Inc. v. Pennsylvania Railroad,* 3 F.R.D. 202 (S.D.N.Y.1942). The former Bankruptcy Rules expressly adopted Federal Rule 42, as do the Bankruptcy Rules which became effective August 1, 1983. See former Bankruptcy Rules 742 and 914; Bankruptcy Rules 7042 and 9014.

The situation at hand lends itself to separate trials on the issues of liability, *i.e.* is there a contract, and damages, *i.e.,* what amount is due under the contract if there is one. The reasons for separate trials include avoidance of confusion resulting from similarity or dissimilarity of claims, avoidance of prejudice, unusual difficulty in proving a particular issue, and the inherent power of the court to regulate the order of proof at trial. *See generally* Weinstein, *Routine Bifurcation of Jury Negligence Trials: An Example of Questionable Use of Rule Making Power,* 14 Vand.L.Rev. 831 (1961). The issues presented and the proof needed to prevail on the validity of the contract claim are separate and distinct from that required on a trial on the counterclaim for unpaid charges under the 1980 contract, and bifurcation has the potential for shortening the trial. *See Kushner ·v. Hendon Const., Inc.,* 81 F.R.D. 93, 99 (M.D.Pa.) *aff'd* 609 F.2d 502 (3d Cir.1979). The situation is typical of that of determining liability, and then proceeding separately on the issue of damages. *See Gutor International AG v. Raymond Packer Co., Inc.,* 493 F.2d 938 (1st Cir.1974); *Crummett v. Corbin,* 475 F.2d 816 (6th Cir.1973).

At oral argument this court inquired extensively as to what effect the separation of the determination of the validity of the 1980 contract from TVA's counterclaim for

unpaid charges would have. This inquiry provided no information on the nature of any prejudice. This court can find no prejudice from bifurcation.[2] TVA is free to raise and litigate any and all defenses and theories on the contract validity issue.

■ A judgment in TVA's favor on its counterclaim would in any event be only a partial and unsatisfactory step towards resolution of TVA's rights against Revere under the 1980 contract, if it is held to be valid. A judgment in TVA's favor would not permit TVA to levy on Revere's property to recover on a prepetition claim. Prepetition creditors may be paid or recover on their claims in a Chapter 11 case only by means of a distribution under a confirmed plan of reorganization. A meaningful resolution of TVA's counterclaim necessarily requires application of bankruptcy principles respecting the treatment of executory contracts, priority and payment of claims. "Relief from the stay [to permit the liquidation of claims against the debtor in a state court action] . . . will result in at best only a partial resolution of the issues and at worst will further complicate issues and result in needless relitigation." *In re Cloud-Nine Ltd.,* 3 B.R. 202, 204 (Bkrtcy.N. M.1980).

The ultimate determination of amount and priority of any TVA claim rests with this court. The determination and allowance of claims is a matter essential to the bankruptcy process. Bankruptcy Code §§ 502 and 503; *Gardner v. New Jersey,* 329 U.S. 565, 573–74, 67 S.Ct. 467, 471–72, 91 L.Ed. 504 (1947); *In re Cloud-Nine Ltd., supra.* Under the circumstances of this case, the bankruptcy court will not delegate its function of determining the amount, priority and allowability of any claim of TVA to the District Court of Alabama.

■ TVA relies on the case of *In re Bohack v. Borden, Inc.,* 599 F.2d 1160 (2d Cir.1979) for support of its position that the District Court Action should proceed in its entirety, including the TVA counterclaim. Such reliance is misplaced. The crucial difference is that *Bohack* dealt with a creditor's right of setoff, and, in any event, the Second Circuit did not fix an absolute rule. *Id.* at 1166. No setoff is involved here. Although properly denominated a counterclaim, TVA's counterclaim is not in fact an offset to Revere's claim since if Revere succeeds in invalidating the 1980 contract, the counterclaim must fail. The only circumstance that comes to mind in which setoff could arise is if Revere were to be awarded monetary damages from TVA in addition to or in lieu of the relief it seeks, which is to have the 1980 contract declared invalid. If that unlikely outcome occurs, nothing decided here precludes an application by TVA for permission to effectuate a setoff. TVA is not being denied a right to setoff,[3] nor is this a situation in which TVA

---

**2.** The court notes that Revere's complaint filed in the District Court contains a demand for trial by jury. Neither the right to trial by jury nor the right to present evidence is affected by this decision. Although not stated, the only "prejudice" this court can see from bifurcation is that TVA will not be able to attempt to influence a jury on the contract issue by repeated reference to the amount of money Revere owes to it and the effect that has on other ratepayers. TVA's complaint on the effects of nonpayment on it is no different than that of any unpaid creditor of a Chapter 11 debtor and those effects, although perhaps appealing to a jury's sympathies, are not material to TVA's legal rights. Indeed, prevention of this type of prejudice is one of the purposes of bifurcation. See *Crummett v. Corbin, supra* at 817 ("[C]onsideration of evidence not related to the question of liability appears to be a type of prejudice which is to be avoided by separating the issues of liability and damages under Rule 42(b).").  This court leaves it entirely in the hands of the District Court to determine to what extent TVA may properly introduce evidence respecting the general amount of the indebtedness which would be due to it from Revere if the contract is upheld.

**3.** ' Setoff is a statutory exception to the law of preference and may be conceptualized as a form of security for payment of a claim. See Bankruptcy Code §§ 547 and 553. Having the right to setoff enables a prepetition creditor to secure payment on its claim by means of the offset to the extent of the offset. Should the creditor be owed more on its prepetition debt than the amount of any available setoff, the creditor is relegated to recovering on the remaining claim by means of a pro rata dividend in a liquidation or a distribution under a plan in a reorganization. *Compare Bohack, supra, in*

is being forced to litigate with its hands tied behind its back. *Cf. In re Bailey,* 11 B.R. 199, 201 (Bkrtcy.E.D.Va.1981) (creditor entitled to relief from automatic stay so that it could take discovery of debtor, as it would be inequitable to allow debtor to proceed in an action without giving creditor opportunity to defend itself). Indeed, this court's careful review of TVA's memorandum of law to this court and the attached exhibits leaves this court of the opinion that TVA has sought to obscure the applicable bankruptcy issues by surrounding them with suggestions of complexity and novelty.[4] TVA should not in the guise of protecting its legitimate interests be permitted to use this Chapter 11 case to shield itself from a determination on the merits of Revere's claims respecting the invalidity of the 1980 contract. Even as a plaintiff in an action in a non-bankruptcy forum, Revere remains a debtor-in-possession and TVA's rights and remedies against Revere in the event TVA should prevail on the contract validity issue and the counterclaim are necessarily affected by that debtor-in-possession status.

■ Under Bankruptcy Code § 105(a) the bankruptcy court may

"issue any order, or judgment that is necessary or appropriate to carry out the provisions of this title."

Due to the significance of the 1980 contract to the reorganization plan, it is essential that Revere be permitted to obtain a prompt judicial determination of the validity of that contract and that it proceed in a forum free of the constitutional cloud imposed by the *Marathon* decision. That this latter point is no mere academic concern is indicated by the fact that TVA has already raised the *Marathon* issue in this case. This court in the exercise of its discretion determines that it is necessary and appropriate to carry out the purposes of Chapter 11 that an order be entered permitting the District Court Action to proceed for the purposes of

resolving the validity of the 1980 contract but enjoining the resolution of the TVA counterclaim. *See Assoc. of St. Croix Condo. Owners v. St. Croix Hotel, supra* at 448 (non-bankruptcy forum will remand proceeding to bankruptcy forum for determination as to whether the stay should remain in effect).

## II. *Revere Is Not Barred By Collateral Estoppel*

TVA further argues that the question presently before this court was previously decided by the District Court and by virtue of this Revere is collaterally estopped from raising the issue in the bankruptcy forum. This court need not address the question of whether Revere should be collaterally estopped from seeking the requested relief as this court does not view District Court Judge Acker's letter to be a decision on the merits. The letter merely evidences an intent by Judge Acker to defer to the bankruptcy court. This conclusion is buttressed by the last two sentences: "If and when the Bankruptcy Court should release the stay both as to the complaint and the counterclaim they will proceed to trial here. Otherwise, all issues will remain with the Bankruptcy Court." This court has made its determination as to which issues will remain in this forum, and which issues should be litigated in the District Court Action. Accordingly, the parties shall proceed with the determination of the contract validity issues in the District Court Action.

## CONCLUSION

For the foregoing reasons, the parties should continue with the District Court Action for the purpose of obtaining a determination of the validity of the 1980 contract but shall be stayed from continuing the District Court Action with respect to TVA's counterclaim.

SO ORDERED.

---

which the claimed setoff was substantially less than the amount being sought by the debtor on its antitrust claims.

4. The court notes that no applications have been made in this court to resolve the "novel and complex" issues suggested in TVA's letter to Judge Acker.