**In re CHATEAUGAY CORPORATION, Reomar, Inc., the LTV Corporation, et al., Debtors.**

**MICHIGAN BUREAU OF WORKERS' DISABILITY COMPENSATION and Michigan Self–Insurers' Security Fund, Appellants,**

v.

**CHATEAUGAY CORPORATION, Reomar, Inc., the LTV Corporation, et al., Appellees.**

No. 87 Civ. 0893 (MEL).

United States District Court, S.D. New York.

Dec. 9, 1987.

Frank J. Kelley, Atty. Gen., Caleb B. Martin, Jr., Asst. Atty. Gen., Detroit, Mich., Warren J. Bennia, New York City, for Michigan Bureau of Workers' Disability Compensation and Michigan Self–Insurers' Sec. Fund.

Levin & Weintraub & Crames, Davis, Polk & Wardwell, New York City (Michael J. Crames, Marc Abrams, Edmund M. Emrich, Kenneth M. Lewis, New York City, Karen E. Wagner, of counsel), for Chateaugay Corp., Reomar, Inc., The LTV Corp., et al.

LASKER, District Judge.

This case concerns the bankruptcy of LTV, whose bankruptcy petition has been characterized as the largest ever filed in this country. The State of Michigan, Bureau of Workers' Disability Compensation, and Self–Insurers' Security Fund ("Michigan") appeal from the November 18, 1986 order of Bankruptcy Judge Lifland, clarifying his order of July 17, 1986. The July 17 order authorized and empowered the debtors (collectively "LTV") to pay certain prepetition wages and salaries, reimbursement expenses, and employee benefits. Acting under the order, LTV resumed payment of workers' compensation claims in some but not all states. Since its claimants were not receiving compensation, Michigan moved to clarify the order, asking that it be interpreted as requiring payment in all states or, in the alternative, that the order be reconsidered. Judge Lifland, in the order now being appealed, concluded that LTV's actions were proper under the July 17 order because its language was permissive.

On appeal, Michigan argues that the Bankruptcy Court erred by not requiring the debtors to treat all prepetition workers' compensation claims alike. According to Michigan, the payments constituted a distribution and LTV's method of distribution violates § 507 and § 1122 of Bankruptcy Act (the "Act"), which respectively establish priority and classification rules.

LTV maintains that Judge Lifland's order is interlocutory and therefore not appealable, and that this court should not grant a leave to appeal. The order, it argues, was also within the judge's discretion. According to LTV, the standards cited by Michigan apply only to reorganization plans, not to earlier stages of a bankruptcy proceeding. Alternatively, LTV contends that even if priority rules are applicable, the rules must yield if strict adherence would frustrate reorganization.

I conclude that Judge Lifland's order was interlocutory, that a leave to appeal should not be granted, and that the Judge Lifland neither erred nor abused his discretion in issuing the order.

## I. BACKGROUND [1]

On July 17, 1986, LTV filed a petition for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* LTV Corporation is a holding company that owns a majority of the common stock or partnership interests of the debtors. One of LTV's subsidiaries, LTV Steel Company, Inc., the second largest steel operation in the United States, has sustained substantial losses since 1982 because of the poor market conditions in the domestic steel industry. Between January 1, 1984 and June 30, 1986, LTV Steel's losses approximated $1.5 billion. As of November 1986, LTV Steel had approximately 28,000 active and 10,500 laid off employees. LTV Steel has reduced its steel making operations and

---

1. Unless otherwise indicated, all facts in this section are drawn from Judge Lifland's November 18 "Findings of Fact and Conclusions of Law and Order Denying Motion of State of Michigan for Order Compelling Debtors to Pay Prepetition Workers' Compensation Claims". Record of Appeal (RA) I.

ceased meaningful operations in several states, including Michigan.

LTV is required by the states in which it operates to provide workers' compensation coverage for current employees. LTV Steel, until recently, self-insured its workers' compensation obligations in approximately twelve states, which were most, if not all, of the states in which it did business.

To self-insure, the company must assure the state that it has the financial ability to make workers' compensation payments; it must provide adequate security—often in the form of a bond in the event of a default; and it must be able to administer its claims. LTV chose to self-insure rather than purchase commercial insurance because it found self-insurance less expensive.

In May 1985, Michigan increased the amount of surety it required of LTV from $100,000 to $300,000. Not only was LTV unable to get additional coverage, but Aetna Casualty and Surety Company cancelled several surety bonds, including its $100,000 bond in Michigan,[2] which had qualified LTV as a self-insurer. Michigan rejected LTV's offer of cash collateral. After relinquishing its self-insured status, LTV purchased commercial insurance to cover subsequent claims. LTV also continued to pay claims for those injured before the commercial insurance took effect.

Upon filing its petition in bankruptcy, LTV was required, absent a court order, to cease payment of obligations incurred prior to the petition, including wages and salaries. On the date of filing, July 17, 1986, Judge Lifland, upon application of LTV, issued an order authorizing and empowering LTV to continue payment of prepetition wages and salaries, employee reimbursement expenses, and benefits. The aggregate value of the payments authorized was estimated to exceed $250 million. RA–D–6. The court found the order consistent with LTV's business imperatives. The last paragraph of the order, the subject of Michigan's motion to clarify, states:

> ORDERED, that the Debtors be, and they hereby are, authorized and empowered to pay all employees' workers' compensation, "black lung" and related benefits and claims which arose or accrued prior to the Filing Date.[3]

Shortly thereafter, LTV resumed payment of workers' compensation claims in some states; it did not resume payments in Michigan.[4] LTV maintains that its decision was based on sound business judgment, following an economic evaluation. LTV determined that continued payment in all states would frustrate its reorganization efforts. It ceased payments in states in which it believed private insurance or a state fund would cover its employee-claimants. LTV's payments continued in states in which it was able to retain its self-insured status and in which LTV determined that self-insurance was economically preferable.

LTV estimates a ten-year savings of approximately $136 million by continuing self-insurance in those states[5] and a $108 million savings over ten years by discontinuing its self-insurance in other states. LTV also concluded that continuation of payments in only some states would be reasonable since those claims not provided for on an ongoing basis would be eligible for equitable treatment under LTV's ultimate reorganization plan. RA–D–9.

LTV estimates that it has $2.6 million of workers' compensation liabilities in Michigan. It anticipated that Michigan's Self-Insurers' Security Fund ["SISF"] would pay the estimated $2.5 million shortfall between future liabilities and bond coverage

---

**2.** Aetna cancelled surety bonds supporting LTV's self-insured status in many other states, including Pennsylvania, New York, Kentucky, Alabama, and Indiana. LTV Statement in Opposition, RA–D–5–6.

**3.** Unlike other provisions of the order allowing payment of wages, salaries, medical and reimbursement claims, the court did not place an

upper ceiling on the amount that could be paid for workers' compensation.

**4.** In the October 23, 1986 hearing before Judge Lifland, LTV indicated that it had resumed payments in only three of twelve states. RA–H–26.

**5.** LTV maintained its self-insured status in Ohio, Indiana, Illinois.

and that accordingly its actions would not impair any workers' compensations claims. RA–D–10.

As indicated above, on August 28, 1986, Michigan filed a motion requesting the bankruptcy court to clarify its July 17, 1986 order and to interpret the paragraph at issue as mandatory. The Official Unsecured Creditors' Committee joined the debtors in opposing the motion.[6]

After hearings on the motion on October 8 and 23,[7] Judge Lifland orally denied the motion on October 23; he issued written findings of fact and conclusions of law on November 18, 1986. Judge Lifland held that the order "constitutes a grant of authority as opposed to a command of its exercise." He found that prepetition workers' compensation claims were general and unsecured and concluded that LTV Steel's

> state-by-state treatment of workers' compensation claims is based upon sound business judgment, constitutes a reasonable exercise of the discretion conferred upon it by the Order and is consistent with its fiduciary duty to preserve and maximize the value of its estate for the benefit of all creditors.

RA–I–11. The order, he held, also did not violate 11 U.S.C. § 1122, because that section applies to *plans* of reorganization only and not preconfirmation stages of a proceeding. He concluded:

> ...the Court finds that LTV Steel is not required to pay pre-Filing Date workers' compensation claims in the State of Michigan and is not able to make such payments without violating its fiduciary obligations to the estate.

RA–I–12.

On November 18, 1986, SISF began providing compensation to LTV's sixty disabled Michigan workers. Michigan explains that SISF began payments after deciding that, although in its opinion Michigan's statute does not authorize payment, it was concluded that injured workers should not be deprived benefits during the appeal process.

Michigan now appeals the Bankruptcy Court's order.[8]

## II. JURISDICTION

A district court has appellate jurisdiction of bankruptcy court decisions 1) if the bankruptcy court order or judgment is final or 2) if the district court grants a leave to appeal from an interlocutory order or decree. 28 U.S.C. § 158(a) (Supp.1984). I conclude that Judge Lifland's order of November 18, 1986 is not appealable and that leave to appeal should not be granted.

### A.

■ Although a final decision in plenary proceedings is one that ends the litigation on the merits and leaves the court with nothing to do but execute the judgment, *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633–34, 89 L.Ed. 911 (1945), in bankruptcy, the definition of "final judgment" is not restricted to judgments that end the entire proceeding. *See In re Saco Local Development Corp.*, 711 F.2d 441, 443–46 (1st Cir.1983). The district court has appellate jurisdiction over the final resolution of a particular proceeding or controversy within the entire bankruptcy proceeding or of an order that irrevocably decides a dispositive issue of law or the rights of

---

6. The Committee supported LTV's decision to make payments in some states only. It argued that claimants would receive payments from SISF or other sureties, SISF would be able to recover under the plan as a general unsecured creditor, and LTV needed the discretion of the July 17 order to satisfy its fiduciary obligation to its creditors. RA–E.

7. Much of the hearing focused on Michigan's argument that, contrary to LTV's representations, all workers' compensation claims would not be paid by bonds or state funds. Michigan stated that its SISF was prohibited by statute from assuming payments unless the debtor was insolvent and unable to pay its workers' compensation claimants. Michigan maintained that the latter requirement could not be satisfied if LTV continued payments in other states. RA–H–11.

8. The Official Committee of Unsecured Creditors did not file papers on appeal, but in their appearance on oral argument stated their continued opposition to Michigan's argument. [Transcript, 25–6].

any party. *In re Stable Mews Associates*, 778 F.2d 121, 122 (2d Cir.1985); *In re Chateaugay Corp.*, 64 B.R. 990, 996 (S.D.N.Y. 1986)[9]; *In re Johns–Manville Corp.*, 39 B.R. 234, 235 (S.D.N.Y.1984).

Michigan argues that Judge Lifland's November 18 order is final as a matter of law because it granted a priority to those prepetition workers' claimants whom the debtor choses to pay. *See In re Saco Local Development Corp.*, 711 F.2d 441 (1st Cir.1981) (order granting priority final although subject to reduction by other claims). In response, LTV maintains that the order is interlocutory because it does not determine 1) the nature or value of prepetition claims; 2) the size, nature, or ranking of distribution that would be required under any plan of reorganization; or 3) whether the claims of those not currently receiving benefits would ultimately differ from those who are receiving such payments.

In determining whether a bankruptcy order is final, the decisions consider the following factors:

1) whether the bankruptcy judge left open the possibility of challenges to the order or planned further hearings, *In re Charter Co.*, 778 F.2d 617, 622 (11th Cir. 1985) (holding order allowing consolidation of cash management interlocutory because the court stated that the order would be open to challenge and suggestion); *In re Chateaugay Corp.*, 64 B.R. at 996 (holding bankruptcy court order interlocutory because it would need to reconsider issue again in six months and judge clearly indicated intent to resolve factual and legal issues at later hearing);

2) whether the judge had granted a priority, *In re Saco Local Development Corp.*, 711 F.2d at 447–48 (holding order conclusively determining priority dispute final); *In re Chateaugay Corp.*, 64 B.R. at 997 (holding order did not decide right of any party since order did not establish a priority; it left open possibility of a setoff);

3) whether the order determined the nature and value of the claim, *In re Saco Local Development Corp.*, 711 F.2d at 448 (holding order establishing nature of claim and value, subject only to reduction by other claims, was final); *In re Chateaugay Corp.*, 64 B.R. at 998 (holding order establishing claim but not nature and worth interlocutory);

4) whether the bankruptcy order bars the party from further action because of res judicata, *Borg–Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1309 (11th Cir.1982) (holding that order finding corporation had no enforceable security interest was final as res judicata would bar subsequent attempts to enforce its interest);

5) whether other Code remedies were available to appellant, *In re N. 405 Bedford Dr. Corp.*, 778 F.2d 1374, 1377–78 (9th Cir. 1985) (holding denial of motion to dismiss bankruptcy proceeding not final since appellants could protect their security interest through various code provisions); *Mason v. Integrity Insurance Co.*, 709 F.2d 1313, 1317–8 (9th Cir.1983) (holding order denying motion to vacate an order for relief was final since no other remedy would prevent irreparable injury);

6) whether further proceedings would affect the scope of the order, *In re 405 N. Bedford Dr. Corp.*, 778 F.2d at 1377. Finally, orders that do not directly effect the disposition of the estate's assets and that are merely a preliminary step in a phase of a bankruptcy proceeding are held to be interlocutory. *In re Delta Services Industries*, 782 F.2d 1267, 1270–71 (5th Cir.1986).

Michigan relies upon *In re Saco Local Development Corp.*, 711 F.2d 441, for authority that the November 18 order was final. In *Saco*, the lower court had found, in a Chapter 7 liquidation proceeding, that Northwestern Insurance Company was entitled to a § 507(a)(4) priority for amounts due for unpaid employee group insurance. The court had settled the amount due, subject only to reduction for claims awarded

---

**9.** The court in *Chateaugay* suggested that, under the new Bankruptcy Code, the Second Circuit may construe the finality requirement less lib-

erally. *In re Chateaugay Corp.*, 64 B.R. 990, 996 n. 10 (S.D.N.Y.1986).

for employee wages, salaries, or commissions under § 507(a)(3).[10]  The court of appeals held that this order was final, because it settled the creditor's claim by determining the priority and amount due.

LTV, citing *In re Chateaugay*, 64 B.R. 990, argues that the order of November 18, 1986 was interlocutory.  In *Chateaugay*, a case in this district involving the debtors currently before this court, Judge Lowe held that an order temporarily authorizing LTV to resume payments to retired workers, issued upon a bankruptcy court finding that reorganization would otherwise be impossible, was interlocutory.  The court rejected arguments that the order was final because appellants would have no practical means of recovering the payments made and the scheme accorded different treatment to prepetition creditors.  The court found that the appellants had failed to show irreparable harm, because they had not demonstrated that later payment of their claims would not be possible.  Unlike the case at hand, the *Chateaugay* bankruptcy court did not make findings of fact and conclusions of law; the order provided only temporary relief and required reconsideration in a matter of months; and it did "not definitively grant a priority ... since it leaves open the possibility of a later set-off."  *Chateaugay*, 64 B.R. at 997.  There, as here, the value of the claim remained undetermined.

Although both Michigan's and LTV's arguments have merit, LTV's is more persuasive.  The factors present in this case, although distinguishable from both, more nearly parallel *Chateaugay* than *Saco*.

Only Judge Lifland's failure to explicitly leave open the possibility of future challenges to the order or plan further hearings clearly militates in favor of finding this order to be final.  Other factors support the conclusion that the order is interlocutory.  The order did not establish a priority[11] and did not determine the nature and value of the claims of individuals receiving workers compensation benefits or of state funds making such payments.  Although there seems to be no Code remedy available to Michigan entitling it to an order at this time that LTV must, in pre-plan stages, pay workers' compensation claimants in all states, Michigan is not without ultimate remedy.  Should Michigan pay its claimants, it will become a creditor entitled to challenge LTV's reorganization plan if it fails to make provisions which Michigan deems adequate.  Although Judge Lifland did not in his November 18th order, as he did in his *Chateaugay* order, explicitly leave open the possibility of a later set-off, his failure to do so leaves such matters open.  Finally, the November 18th order does not bar Michigan from further action on grounds of *res judicata*.[12]  Although

---

**10.**  § 507 of the Bankruptcy Code establishes priorities for payments of the bankrupt.  Payments of employee salaries and wages have priority over those for employee benefits.  Payments of individual employee wages are not to exceed $2,000; similarly, payments of each individual employee's benefits are not to exceed $2,000, *less* the amount awarded for wages and salaries.  11 U.S.C. § 507 (1982 & Supp.1984).

**11.**  Michigan maintains that the order does establish a priority, but I hold otherwise.  *See infra* pp. 286–87.

**12.**  Michigan had sought unsuccessfully to include in final paragraph of the July 17 order the changes noted in brackets:

> ... the Court finds that LTV Steel is not required [at this time] to pay pre-Filing Date workers' compensation claims in the State of Michigan and is not able [at this time] to make such payments without violating its fiduciary obligations to the estate.

LTV, in a letter to Judge Lifland dated November 10, 1986 accompanying LTV's proposed order, explained the proposed change and its opposition.

> We believe this language is inappropriate as it connotes that the order has not finally adjudicated or determined anything and that it is interim in nature.  We believe that the Court has resolved the Michigan motion in a dispositive fashion and that the words "at this time" are contrary to that result.  I have informed Mr. Martin, however, that entry of the order would not prejudice Michigan's right to file subsequent motions or proofs of claim, subject to the debtors' rights to object on any basis, including res judicata.

Appellants' moved on January 22 to expand the record on appeal to include LTV's letter of November 10, 1985, believing it relevant to the issue of finality.  Because the letter does not conclusively support either party and is in fact consistent with this holding that, although the November 18 order was a final clarification of

Michigan is barred from further challenging the propriety and construction of the November 18th order, if the controlling facts should materially change, Michigan may move for relief. *Cf. In re Penn Central Transportation Company*, 452 F.2d 1107, 1109 (3rd Cir.1971) (stating the district court should continually review propriety of its order in Chapter 11 bankruptcy proceedings authorizing payment of certain post-petition debts), *cert. denied*, 406 U.S. 944, 92 S.Ct. 2040, 32 L.Ed.2d 331 (1972).

### B.

■ Even if a bankruptcy court's order is interlocutory, this court has jurisdiction to grant leave to appeal pursuant to 28 U.S.C. § 158(a), which provides:

The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges ...

28 U.S.C. § 158(a) (Supp.1984). A leave to appeal has been found appropriate if:

there are substantial grounds for difference of opinion as to the controlling questions of law, and where an immediate appeal from the order may materially advance the ultimate termination of the litigation.

*Matter of Bertoli*, 58 B.R. 992, 995 (D.N.J. 1986) (citations omitted), *aff'd*, 812 F.2d 136 (3rd Cir.1987); *In re Johns–Manville Corp.*, 39 B.R. 234, 236 (S.D.N.Y.1984). The standards of 28 U.S.C. § 1292(b) are applicable in deciding whether to grant leave to appeal.

LTV's argument that a leave is not appropriate is persuasive. Again, LTV relies on *Chateaugay* which, on this issue, is squarely on point. The *Chateaugay* court held that the appeal before it did not present a controlling question of law, stating:

The simple question presented on this appeal is whether the Bankruptcy Court

had the equitable power, consistent with the rehabilitative purpose of reorganization proceedings, to issue the emergency order in question [authorizing temporary resumption of payments for health and life insurance benefits]. That is not a question which will control or materially advance the outcome of the largest bankruptcy petition ever filed in the United States.

*In re Chateaugay Corp.*, 64 B.R. at 999. The issue presented here is virtually identical: Did the Bankruptcy Court have the equitable power to authorize payment of some, but not all, prepetition workers' compensation claims? The question has arisen in the very same bankruptcy petition which is the subject of this appeal. In this case, an appellate decision will not advance the ultimate termination of LTV's bankruptcy proceeding nor will later proceedings in the case be simplified.

In sum, I conclude that Judge Lifland's order is not appealable and that there is no basis for granting leave to appeal. Nevertheless, because, as indicated above, I recognize that Michigan's argument on appealability is not capricious, I have examined the merits of the order.

### III. MERITS OF THE ORDER

■ At stake in this appeal are the claims of sixty people in Michigan entitled to workers' compensation from LTV. The question raised is whether a bankruptcy judge has the authority, in the preplan stages of a reorganization proceeding under Chapter Eleven of the Bankruptcy Act, to authorize the debtor in possession to pay prepetition debts where the order is construed to allow the debtor to pay some creditors in the class while not paying others. There is no binding authority in this circuit addressing the propriety of such an order. While the answer is not obvious, I conclude that the order of the bankruptcy court did not violate the statute.

the earlier order, the November 18 order did not finally determine Michigan's rights, it is not necessary to decide the motion. Therefore, questions of its timeliness, the authority of this

court to expand the record, and the role, if any, it played in Judge Lifland's decision need not be addressed.

Michigan argues that Judge Lifland's order is invalid because it is inconsistent with the following three propositions which Michigan contends are legal requirements [13]: 1) all distributions must be made in accordance with the priorities of § 507; 2) all members of a class of claims under § 1122 [14] must be treated in the same manner throughout the bankruptcy proceeding if a distribution is made under § 507; and 3) claims can only be disallowed for the reasons articulated in § 502(b), which does not include disallowance on a state-by-state basis. Michigan also argues that Judge Lifland disregarded evidence that the SISF would be unable to compensate Michigan's claimants, thereby abusing his discretion.

In response, LTV emphasizes that the bankruptcy court has broad equitable powers.[15] It argues that 1) even if the payments to workers' compensation claimants were a distribution, which LTV contends they were not, § 507 priority are not inflexible, 2) even if workers' compensation claims constituted a separate class, classification is an issue ripe only at the plan stage of a bankruptcy proceeding.[16]

I find LTV's arguments persuasive and conclude, although the points are not fully briefed, that the order did not "disallow" claims and therefore did not violate § 502(b) of the bankruptcy code, and that Judge Lifland did not ignore certain facts described below when reaching his conclusions.

### A.

Michigan relies on *In re FCX, Inc.*, 60 B.R. 405 (E.D.N.C.1986) to support its arguments that the payment of prepetition workers' compensation claims constitute a "distribution" under § 507 and that the priorities of § 507 are not subject to deviation. The *FCX* court held that a bankruptcy court lacked authority to permit payment of prepetition indebtedness arising from unpaid payroll expenses, payroll taxes, and purchases of grain. The bankruptcy court had found that the payments were necessary for the debtor's effective reorganization and continued operation, and that the debtor's net worth created a reasonable probability that all unsecured creditors would be paid if the payments were authorized. The district court, although recognizing the equitable powers of the bankruptcy court, held that the bankruptcy court could not apply such powers to establish a ranking of priorities within priorities. *Id.* at 409. It held that by authorizing payments of these prepetition debts, the bankruptcy court had effectively subordinated the claims of remaining general unsecured creditors, an act not authorized by law absent inequitable conduct or a compelling public interest exception. *Id.* at 410. The district court concluded that payment of claims prior to implementation of the reorganization plan was inconsistent with the Act, because the reorganization might fail and in such circumstances the estate might have insufficient funds to pay all creditors in the same position.

LTV argues that *In re Penn Central Transportation Co.*, 452 F.2d 1107, supports its position that the payments of workers compensation claims authorized in the November 18th order did not constitute

---

**13.** In a footnote to its brief, LTV asks the court to preclude Michigan from arguing that the November 18 order violated § 507 of the Bankruptcy Code, since that argument was not made below. Michigan's argument does not, however, as LTV maintains, differ in degree from its central argument before Judge Lifland that all members of the same class must be treated alike under § 1122. Rather, the § 507 argument is used to establish that § 1122 is applicable.

**14.** Appellants contend that workers' compensation claims constitute a separate class under § 1122. For the reasons discussed *infra* pp. 287–88 this argument does not need to be addressed.

**15.** Although much of LTV's brief emphasizes the equitable powers of the bankruptcy court, this decision does not address that argument. Instead, the opinion focuses on the specific points and responses of Michigan.

**16.** LTV's brief argues that workers' compensation claims should not constitute a separate class. At oral argument, LTV articulated its position that classification of claims is not appropriate at this stage of the bankruptcy proceeding; this point was also briefed extensively in proceedings in the bankruptcy court.

a distribution and that, even if they did, the distribution does not violate the priority rules of § 507. In *Penn Central,* objection was made to an order of the district court which had directed the nonpayment of some taxes and authorized the payment of others. The order was issued upon a finding that the debtor could not otherwise meet its current operating expenses. The circuit court upheld the order on appeal, stating that even though the taxes at issue were clearly first priority claims,[17] entitled to pro rata participation, "[p]ro rata participation, however, does not necessarily imply that all claims are entitled to simultaneous participation. To so hold would unduly impair the flexibility so essential to a reorganization proceeding." 452 F.2d at 1108. *See also In re Boston and Maine Corp.,* 719 F.2d 493, 501 (1st Cir.1983) (holding that requirement that creditors of same priority be treated alike did not require simultaneous satisfaction), *cert. denied,* 466 U.S. 938, 104 S.Ct. 1913, 80 L.Ed.2d 461 (1984); *In re Jewish Memorial Hospital,* 13 B.R. 417, 420–21 (Bankr.S.D.N.Y.1981) (order authorizing payment of only some claims consistent with flexibility required for reorganization and order does not establish priority within priority). The circuit court emphasized that appellants had no record basis to support their allegation that the company's assets would ultimately be inadequate to satisfy their claims. It also rejected the argument that the order created a priority among claims within a given class, emphasizing that the order was temporary, did not disallow appellants' claims, and did not decide the extent of appellants' participation in the plan of distribution. *In re Penn Central Transportation Co.,* 452 F.2d at 1109.

In the absence of authority binding in this circuit, I find *Penn Central* more persuasive than *FCX,* despite the latter's similarities to the case at hand. A rigid application of the priorities of § 507 would be inconsistent with the fundamental purpose of reorganization and of the Act's grant of equity powers to bankruptcy courts, which is to create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately. The Supreme Court has emphasized the special nature of reorganization proceedings.

> It is a special proceeding which seeks only to bring about a reorganization, if a satisfactory plan to that end can be devised and to prevent the attainment of that object is to defeat the very end the accomplishment of which was the sole aim of the section, and thereby to render its provisions futile.

*Continental Illinois National Bank & Trust Co. v. Chicago, Rock Island & Pac. Ry.,* 294 U.S. 648, 676, 55 S.Ct. 595, 606, 79 L.Ed. 1110 (1935). In this case, a restrictive interpretation of § 507 or of the powers accorded the bankruptcy court judge would similarly defeat the very end of Chapter 11 petitions.

Moreover, there is a serious question whether § 507 applies at this stage of the bankruptcy proceedings. Michigan's argument that § 507 is appropriate is based on the contention that the payments authorized by the November 18th bankruptcy court order are a "distribution", but it appears more likely that that term is generally, if not exclusively, used as a term of art not to refer to interim payments by the debtor, but to the ultimate "plan of distribution". *In re Penn Central Transporation Co.,* 452 F.2d at 1109.

**B.**

Michigan maintains that workers' compensation claims constitute a separate class under 11 U.S.C. § 1122(a), which provides:

---

**17.** In the case before this court, it is not clear, as it was in *Penn Central,* that the appellants are entitled to a priority under § 507. Section 507 specifies seven types of claims entitled to priority including, first, administrative expenses, second, unsecured claims arising after commencement of the case but before appointment of the trustee in involuntary cases; third, unsecured claims for wages, salaries, or commissions; fourth, unsecured claims for contribution to employee benefit plans; fifth, unsecured claims of those engaged in grain production or of fishermen; sixth, unsecured claims of individuals for deposits for property or services; seventh, unsecured claims of governmental units. Judge Lifland, in his order, characterized workers' compensation claims as general unsecured claims.

(a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

11 U.S.C. § 1122(a) (1982). Section 1122 has been interpreted to require that like claims be treated alike in reorganization plans. *In re Mastercraft Record Plating, Inc.*, 32 B.R. 106, 108 (Bankr S.D.N.Y.1983) *rev'd on other grounds*, 39 B.R. 654 (S.D. N.Y.1984). Michigan argues that this rationale should be extended to preplan stages of bankruptcy, because absent similar treatment in the preplan stages, claims cannot in practicality be treated alike in the reorganization plan. It contends that since there has been a distribution pursuant to § 507, all members of a class must be treated similarly. The central issue and the one which is addressed here is not whether workers' compensation claims should be classified separately, but whether claimants in the same class may be treated differently.[18]

I find Michigan's argument unpersuasive for four reasons. First, to the extent their argument rests on *FCX* and treatment of the current payment as a distribution, the argument cannot prevail for reasons discussed in Section A, *supra*.[19] Second, Michigan has cited no authority for the proposition that class members must be treated alike throughout all stages of the bankruptcy proceeding. Section 1122, interpreted to require like treatment, is limited to treatment of a class pursuant to a *plan* of reorganization, as indicated by its language, its placement in Subchapter II of the Act entitled "The Plan," and case law addressing issues arising under § 1122 consistently refers to classification under "the plan." *See In re Mastercraft Record Plating, Inc.*, 32 B.R. at 108 ("Bankruptcy Code § 1122 deals with classification of claims for the purposes of the plan."); *Matter of Rochem*, 58 B.R. 641, 642 (Bankr.N.J.1985) (discussing classification under the plan). Also extending the reach and requirements of § 1122 to preplan stages of the proceeding would, inconsistent with the purpose of the Act, limit the flexibility of the court and the debtor. Third, even if § 1122 applied to preplan proceedings, "the fact that the bankruptcy courts are courts of equity ... allows exceptions to any strict rules of classification of claims." *Brinkley v. Chase Manhattan Mortgage and Realty Trust*, 622 F.2d 872, 879 (5th Cir.) (upholding lower courts confirmation of debtor's plan that separately classified trade creditors and insiders; under plan, trade creditors received either full or 40% payment whereas insiders received nothing). Fourth, although possible, it does not conclusively follow from this ruling that Michigan will not ultimately, in the plan, receive a share equal to that given in other states.

## C.

Relying only on *FCX*, Michigan maintains that the November 18 order violated § 502(b), which specifies eight grounds for disallowance of claims, by allowing LTV to treat workers' compensation claims differently based on state residence.

This argument is unpersuasive. It is incorrect to characterize the nonpayment to Michigan claimants at this time as a disal-

---

**18.** To the extent that LTV is and continues to pay workers' compensation claimants in some states, claimants in Michigan are being treated differently from others, whether they are ultimately classified with all general unsecured creditors or in a class consisting only of workers' compensation claimants.

**19.** Although there is broad language in the recent case of *Official Committee of Equity Security Holders v. Mabey*, 832 F.2d 299 (4th Cir.1987) (holding that district court's order that debtor create a $15 million emergency treatment fund, to provide for reconstructive surgery or in vitro fertilization for eligible Dalkon shield claim-

ants, violates the language and intent of the Bankruptcy Code, because it afforded preferential treatment to some unsecured claimants over others similarly situated) supporting Michigan's argument that LTV's payment was a distribution and that the order improperly authorized the debtor to treat similar claims differently, the case is distinguishable. In *Mabey*, because the debtor, unlike LTV, had proposed a plan of reorganization, the payment in that case could be characterized as a distribution and be found to violate § 1122. Moreover, there is no indication that the district court found the order necessary for the debtor's reorganization.

lowance. *See In re Penn Central Transportation Co.*, 452 F.2d at 1109 (holding that order directing nonpyament of some taxes and authorizing payment of others did not purport to disallow then unpaid claims). In addition, § 502(b) specifies the grounds on and the procedures by which a claim may be disallowed. Michigan has not alleged nor produced evidence that any party in interest has objected to allowance of the claim and that it was disallowed following notice and a hearing. 18 U.S.C. § 502(a) and (b).

### D.

Michigan contends that Judge Lifland abused his discretion by disregarding evidence at the hearings indicating that workers' compensation claimants in Michigan would not be compensated to the same extent as those in other states, because the SISF could only compensate Michigan claimants if LTV were shown to be insolvent, a standard that could not be satisfied as long LTV continued to provide compensation in some states.[20]

There is evidence in the transcript of the October 23 hearing and the findings of fact, however, that Judge Lifland did consider this evidence. During the hearing, Gary Calkin, Administrator of Michigan's SISF, testified that the SISF was required by statute, prior to making payments, to find that the debtor was insolvent, that it was unable to pay, and to receive requests for payment from employees. RA–H–45. The SISF had, according to Calkin, determined that LTV was able to pay the claimants based on the court "order entered saying that they could pay and ... knowledge that they [claimants] were paid," RA–H–43, without consideration of LTV's financial records or its operating performance. RA–H–44–45. Judge Lifland's twentieth finding of fact states:

> Movant's [Michigan's] determination that LTV Steel is able to pay such claims was based solely on the provisions of the Order and the determination that payments

were being made by LTV Steel in Core States subsequent to the Filing Date. No consideration was given to LTV Steel's financial status, cash flows, cash requirements or other relevant financial or market data.

This finding indicates that Judge Lifland considered the evidence, but drew different conclusions from it. His finding suggests that he believed that, absent consideration of the debtor's financial status, Michigan could not determine whether the debtor was "unable to pay." He did not, as Michigan argues, disregard the facts and evidence in reaching the conclusion.

In sum, the order of November 18 is interlocutory and leave to appeal is denied.

It is so ordered.

---

**20.** It is unclear from Michigan's brief whether they are challenging the conclusion of law or findings of fact of the November 18 order. Findings of fact of a bankruptcy judge, according to Bankruptcy Rule 8013, are set aside only if they are clearly erroneous, a standard not satisfied here.