**In re SIS CORP. and Sisters International, Inc., Debtors.**

**Bankruptcy Nos. B89–800, B89–801.**

United States Bankruptcy Court,
N.D. Ohio, E.D.

Dec. 20, 1989.

See also, Bkrtcy., 97 B.R. 361.

Daniel McDermott, Office of the U.S. Trustee, U.S. Dept. of Justice, Cleveland, Ohio.

Michael D. Schenker, Kelley, McCann & Livingstone, for Debtors.

Michael E. Jackson, Cleveland, Ohio, for FFCA/IPI 1986 Property Co., Robin Roach and H. Reid Sherard, Trustees.

GTE Mobilnet Service Corp., Barbara West, Houston, Tex.

Irving Bergrin, Cleveland, Ohio, for Best Products, Inc.

John Sweeney, Committee of Unsecured Creditors, Cleveland, Ohio.

Robert E. Coletti, Keating Muething & Klekamp, Cincinnati, Ohio, for David B. Bowen & Assoc.

Michael A. Berman, Office of the Gen. Counsel, S.E.C., Washington, D.C.

Richard L. Loveland, Columbus, Ohio, for Marguerite Colburn Trust.

Alan R. Lepene, Thompson, Hine & Flory, Cleveland, Ohio, for Society Nat. Bank and Ameritrust Co.

Ralph T. Skonce, Jr., Berk & Skonce, Cleveland, Ohio, for J.D.H., Inc.

Wendy's Intern., Inc., Vivian L. Opelt, Dublin, Ohio.

Marvin A. Sicherman, Dettelbach, Sicherman & Baumgart, Cleveland, Ohio, for U.S. West Financial Services, Inc. and MIDAMCO.

Drew T. Parobek, Vorys, Sater, Seymour & Pease, Columbus, Ohio, for Columbus Mall, Inc.

Dennis L. Ruben, Kutak, Rock & Campbell, Denver, Colo., for FFCA/IPI 1985 Property Co., FFCA/IIP 1986 Property Co., Robin Roach and H. Reid Sherard, Trustees.

Anne C. Berry, Taft, Stettinius & Hollister, Columbus, Ohio, for WTVN and WLVQ.

Judith E. Gowing, Dickinson, Wright, Moon, Van Dusen & Freeman, Bloomfield Hills, Mich., for K Mart Corp.

Lee D. Powar, Daniel A. DeMarco, Hahn, Loeser & Parks, Cleveland, Ohio, for Stockton–West–Burkhart, Inc.

Robert J. Lenihen, II, Columbo & Columbo, Birmingham, Mich., for General Motors Corp.

Stephen D. Hobt, Strachan, Green, Miller, Olender & Hobt, Cleveland, Ohio, for The Huntington Nat. Bank.

Vincent R. Jones, S.E.C., Chicago, Ill.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

In this Chapter 11 proceeding, SIS Corp. and Sisters International (Debtors), along with FFCA/IIP 1986 Property Company, FFCA/IPI 1985 Property Company, Robin Roach and H. Reid Sherard (FFCA Parties) have jointly filed this motion seeking approval of a compromise and settlement of all disputes and claims relating to the Debtors' estate, in addition to certain issues regarding twenty-one (21) leases of non-residential real property owned by the FFCA Parties.[1] Additionally, the joint motion seeks to resolve all disputes and issues regarding the assumption, rejection, validity, and characterization of certain leases pursuant to an "Agreement of Compromise and Settlement" executed by the Debtors and the FFCA Parties on October 19, 1989. Society National Bank and Ameritrust Company National Association (The Banks) filed objections to the proposed compromise and settlement between the Debtor and the FFCA Parties. The following constitutes the Court's findings and conclusions.

This is a core proceeding under provisions of 28 U.S.C. § 157(b)(2)(M) and (O) with jurisdiction properly vested under 28 U.S.C. § 1334 and General Order No. 84 of this District. Society and Ameritrust, both secured creditors of the Debtors, object to

an approval of the proposed compromise and settlement on the following grounds: (1) The proposal impermissibly calls for a claim treatment outside the context of a classified claim under a Chapter 11 plan of reorganization; (2) The proposed plan and settlement is inconsistent with the procedural requirements under Chapter 11 of the Bankruptcy Code; (3) It is impossible for the Debtors' creditors and equity security holders to evaluate the fairness and reasonableness of the proposed compromise without those parties having knowledge of the Debtors' proposed plan of reorganization;[2] (4) The portion of the IPI–85 subleases covering the IPI–85 debt should not be the subject of an assumption or rejection as it has attributes of debt financing, as opposed to a true lease; (5) As structured, the proposed settlement does not adequately set forth a basis upon which damages resulting from a rejection of the three (3) FFCA leases can be reasonably determined; (6) The Debtors' proposed assumption of the remaining eighteen (18) leases will create undue administrative expenses for the estate without any assurance of an affirmed plan; and the Debtors should not assume such obligations outside of a confirmed plan; (7) the settlement contains a default cure provision which would remove the automatic stay without a further court hearing; (8) and, finally, they contend that a provision of the proposed settlement effectively precludes third party challenges to the validity, enforceability or characterization of any of the leases covered by the settlement agreement.

### I.

Under Rule 9019(a), Bankr.R., the court may approve a compromise or settlement upon motion and a noticed hearing as provided for under Rule 2002(a). Even with this procedural authority to approve compromises, prepetition claims traditionally

---

1. The Debtor, Sisters International, Inc., is primarily engaged in the operation of a chain of fast-food restaurants through fifty-six (56) owned and franchised locations. The Debtor, Sis Corp., is the parent entity and was consolidated with the Sisters International case for purpose of an efficient joint administration.

2. The Debtors' disclosure statement and plan of reorganization were filed subsequent to this objection.

have not been entitled to priority treatment and have generally not been paid outside of a confirmed plan of reorganization. This view was recently expressed by the Fourth Circuit in *Official Committee of Equity Security Holders v. Mabey*, 832 F.2d 299, 302 (4th Cir.) *cert. den.*, 485 U.S. 962, 108 S.Ct. 1228, 99 L.Ed.2d 428 (1988); See also, *In re Revere Copper and Brass, Inc.*, 32 B.R. 577, 582 (Bankr.S.D.N.Y.1983); *In re FCX, Inc.*, 60 B.R. 405, 410–11 (E.D.N.C. 1986). Certain cases, however, have provided exceptions to this traditional view, premised upon overriding practical and policy reasons. See, *In re Chateaugay*, 64 B.R. 990 (Bankr.S.D.N.Y.1986), *leave to appeal den.*, 80 B.R. 279 (S.D.N.Y.1987).

Whether or not the Debtors can make preplan payments through an assumption of prepetition contracts depends, in part, on whether those agreements are executory in nature. According to one commentator's definition, a contract is executory under the Bankruptcy Code where "the obligations of the debtor and the other party are so unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other...."[3] An examination of the FFCA/IPI–85 Agreement reveals that that agreement is executory in nature and may be assumed or rejected as is allowed under § 365 of the Bankruptcy Code.

In view of the several underlying allegations of the Banks' objection to the proposed compromise, it is remarkable to note that no objection has been made by the Creditors' Committee or the U.S. Trustee. This is particularly significant, as it is the unsecured creditors who stand to be directly impacted upon the rejection of an executory contract as the effect of rejection creates an unsecured claim against the Debtor, not postpetition, but immediately prior to the date of petition filing. On the other hand, the effect of contract assumption is to pay a prepetition claim postpetition and to timely cure any attendant postpetition defaults. The test usually applied to a debtor's decision to assume an executory contract is the business judgment rule. See, *NLRB v. Bildisco*, 465 U.S. 513, 523, 104 S.Ct. 1188, 1194, 79 L.Ed.2d 482 (1984); *In re W & L Associates, Inc.*, 71 B.R. 962, 966 (Bankr.E.D.Pa.1987). Here, it is apparent that the Debtors have deemed it prudent to cease operations of certain of their stores and to continue the operations of others. In so doing, they must necessarily assess the relative operational values of the several stores in terms of long-range profitability in the overall plan of business rehabilitation. In the absence of compelling extrinsic evidence to the contrary, the Debtors' judgment must prevail. The Banks' concern relative to damages attendant to a rejection of the subject leases not only is unsupported but is also premature. To the extent that such damages may occur, § 502(b)(6) was specifically enacted to minimize rejection damages from leases of real property.[4]

The proposed agreement, if approved, would settle all of the claims between these settling parties. By reason of certain lease assumptions, the Debtors would satisfy the prepetition lease obligations. This would be accomplished by allowing the FFCA Parties to allocate the collateral currently in their possession to satisfy the Debtors' prepetition obligations under the assumed leases. Additionally, this same collateral

---

3. Countryman, *Executory Contracts in Bankruptcy Part I*, 57 Minn.L.Rev. 439, 460 (1973).

4. 11 U.S.C. § 502(b)(6):
   (b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim ... and shall allow such claim in such amount except to the extent that—
   (6) if such claim is the claim of a lessor for damages resulting from termination of a lease of real property, such claim exceeds—

(A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—
   (i) the date of the filing of the petition; and
   (ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property, plus
(B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates.

would be allocated to satisfy certain of the Debtors' postpetition obligations (Agreement, p. 5). As a result, this compromise would tend to lessen any postpetition administrative claims which otherwise would inure to the benefit of the FFCA Parties. This proposal further precludes the FFCA Parties from filing a proof of claim, if the settlement is approved by the Court. Without this particular provision, the FFCA Parties would be relegated to the status of unsecured creditors to the extent of rejected leases and, as such, would be entitled to file a proof of claim pursuant to § 365. Their consent to waive this right upon rejection of the leases provides a substantial benefit to other unsecured creditors and, thereby, confers a benefit to the Debtors' estate.

The Banks challenge the character of the subject transaction between the Debtors and the FFCA Parties. Specifically, the Banks contend that the underlying transaction is not a true lease but, rather, is secured debt financing. For purposes of compromise of all claims relating to these leases, and to further a plan of reorganization, the Debtors and FFCA Parties have construed the transaction as a true lease. Again, no general creditor or the U.S. Trustee has expressed an objection in this regard. If the transaction was construed as a secured transaction, the Banks have not demonstrated any adverse impact such a construction would have on their respective secured status. They allege no loss of adequate protection or otherwise complain of an impairment to their secured interest. On the other hand, were the transaction to be construed as a true lease, as agreed to between the settling parties, those parties who stand to be most adversely affected, the unsecured creditors, have expressed no objection in this regard. Here, the proposed settlement not only subserves a fundamental purpose of bankruptcy law by enabling the Debtors with a fresh start, it does so in a most substantial manner. *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). Accordingly, that contention by the Banks is not well-founded, with the Court again finding that the proposed agreement, taken as a whole, is beneficial to the Debtors' estates and to the creditors generally.

## II.

Examining this matter from a practical viewpoint, the Debtors have presented a sound argument for approval of the compromise. Postpetition bargaining with prepetition creditors is vitally necessary in some situations, as here, where the Debtors virtually have no other source to resort to for the relief desired prior to the submission of a plan of reorganization. This type of bargaining with prepetition creditors should be tempered, however, with a debtor asserting a global view which advances the interests of all creditors as a group, particularly the general creditors.[5] See also, *Matter of AWECO, Inc.,* 725 F.2d 293 *reh. den.* 732 F.2d 941 (5th Cir.) and *reh. den. AWECO, Inc. v. U.S.,* 469 U.S. 880, 105 S.Ct. 244, 83 L.Ed.2d 182 (1984); *In re Texaco, Inc.,* 84 B.R. 893, 901 (Bankr.S.D. N.Y.1988). In the present matter, the Court is pursuaded that the Debtors have advanced this perspective. This point is strongly evidenced by no objection to the proposed settlement having been filed by the general creditors. Additionally, the proposed lease rejections will benefit the creditors as a group. On the other hand, the Banks, which are both secured parties, have advanced no persuasive argument in support of their position. Apparently, they are fully secured, as no adequate protection issue was advanced by them. Moreover, they have cited no relevant authorities in support of their position.

As the Fifth Circuit clearly explained in *AWECO, supra,* "Compromises may be effected separately during reorganization proceedings or in the body of the reorganization plan itself." 725 F.2d at 297; see also, *In re Albert Harris,* 313 F.2d 447, 449 (6th Cir.1963). Although the Banks contend otherwise, it is notable that they fail

---

**5.** Baird and Jackson, *Cases, Problems, and Materials on Bankruptcy,* "Post-petition Bargains with Prepetition Creditors," p. 542. (1985).

to pursuasively explain why the procedural provisions of Chapter 11 regarding plan formulation and approval would afford them any significantly greater benefits than their current secured status affords. The decision to approve a given compromise lies within the discretion of the trial court. Such approval should only be given where the settlement is both fair and equitable. *Protective Committee v. Anderson*, 390 U.S. 414, 424, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1 (1968). In this present matter, the settlement, as structured, is fair and equitable and is beneficial to the Debtor's estate and the Debtors' creditors generally. Further, the proposed settlement is not tantamount to a *de facto* plan, presented as a means of circumventing plan approval requirements of the Bankruptcy Code. Having so determined, the remaining allegations raised by the Bank need not be reached.

Accordingly, the proposed compromise and settlement is hereby approved, and the motion to reject the subject leases of nonresidential property is hereby granted. The objection is overruled.

IT IS SO ORDERED.