In re CHATEAUGAY CORPORATION, Reomar, Inc., the LTV Corporation, et al., Debtors.

The PARENT CREDITORS' COMMITTEE OF THE LTV CORPORATION, Appellant,

v.

The LTV CORPORATION and LTV Steel Company, Inc. et al., Appellees.

No. 90 Civ. 3376 (CSH).

United States District Court, S.D. New York.

Oct. 12, 1990.

Blank, Rome, Comisky & McCauley (Arnold I. Kalman, Raymond L. Shapiro, Thomas E. Biron, William E. Taylor, III, Norman E. Greenspan, Regina Stango Kelbon, of counsel) Philadelphia, Pa., for appellant.

Davis Polk & Wardwell (Karen E. Wagner, Regina E. Shannahan, of counsel), Levin & Weintraub, Crames & Edelman, New York City, for appellee The LTV Corp.

OPINION

HAIGHT, District Judge:

The Parent Creditors' Committee of the LTV Corporation appeals from an order of the Bankruptcy Court (Burton R. Lifland, Chief Judge) denying the Parent Committee's motion under Bankruptcy Rule 2004 to conduct oral depositions under oath of

representatives of the Debtors. The appeal to this Court is said to lie under 28 U.S.C. § 158(a). Appellant Parent Creditors' Committee says the Bankruptcy Court's order is appealable. Appellee LTV Corporation says the order is interlocutory and not appealable as of right. If that be the case, the issue becomes whether this Court should grant leave to hear the appeal. The parties take predictable positions with respect to that question.

### Background

This is a proceeding under Chapter 11 of the Bankruptcy Code. Debtors are the LTV Corporation and 66 of its subsidiaries, including LTV Steel Company, Inc. The LTV Corporation is known in the bankruptcy proceedings as the "LTV Parent Corporation." While the bankruptcy proceedings began with a single creditors' committee, a time came when conflicts of interest were perceived between the LTV Parent Corporation and LTV Steel Company, Inc. ("LTV Steel"). In December 1988 the Bankruptcy Court entered an order bifurcating the single creditors' committee into two separate committees: The Parent Creditors' Committee and the Steel Committee Creditors' Committee.

The Debtors have remained in possession with a view towards eventually proposing a plan of reorganization to creditors and to the Bankruptcy Court. Chief Judge Lifland has been in charge of the litigation since its inception.

The Parent Creditors' Committee contends that the LTV Parent Corporation may have entered into fraudulent transfers with LTV Steel which may be recoverable for the benefit of the Parent Corporation's creditors. The Parent Creditors' Committee sought under Bankruptcy Rule 2004 to obtain the Bankruptcy Court's order directing production of documents and examination under oath of witnesses.

Chief Judge Lifland has held a number of conferences and hearings in response to the Committee's Rule 2004 motion. At a hearing on October 19, 1989, following an off-the-record conference, the judge stated that the parties had agreed to negotiate their differences as to what should be produced and in what form. Chief Judge Lifland said on that occasion:

> I have not denied the motion or granted the motion, so that the process of informal exchange of information can go forward and not hamper the ongoing negotiations between the Parent Committee and the Debtors.

Transcript of October 19, 1990 hearing at Tr. 5.

The parties came before Chief Judge Lifland again on March 27, 1990. By that time the Parent Creditors' Committee was focusing upon four intercompany transactions. Counsel for the Committee said to Chief Judge Lifland on March 27, 1990 that "LTV has in fact been cooperative with regard to the production of the documents," adding that he had no reason to believe "that documents that are in fact reasonably relevant to the four intercompany transfers that are identified in my affidavit have not been produced by LTV." Counsel expressed appreciation of Emmett Smith, in-house counsel for LTV

> in terms of allowing his good offices to be used to bring the parties together to allow the documents to be produced in a cooperative fashion, allowed that to go forward and we thank him for that.

But counsel went on to express the Parent Creditor's Committee's belief that

> we are now at a stage where we need to obtain information from individuals. The Parent Committee wishes to proceed at this stage with regard to taking information from individuals, by doing it through oral examinations under oath.

Although pressing the Committee's demand for oral examinations, counsel for the Committee did not foreclose continued cooperation. He stated:

> On the other hand, Your Honor, we are hopeful the cooperation between the parties does not stop. We do not intend to request or take oral examinations of each person who we would like to obtain information from.

> We are, in fact, hopeful that interviews would still be an appropriate mechanism to obtain information from certain indi-

viduals. We are hopeful we will be able to work with LTV through its counsel, whether it be Ms. Wagner or Emmett Smith in this regard. We are hopeful that some information might yet be obtained, Your Honor, through our providing written questions and getting response to written questions.

Notwithstanding that collegial hope, counsel for the Committee reiterated the view that "it's appropriate at this time that we be given the latitude to take oral examinations under oath." Counsel made reference to a trip he had made to Dallas in November to discuss document discovery and "to ask questions with regard to a variety of transactions." Counsel concluded by characterizing that mission as "not a productive session or a productive day and we are pressing, Your Honor, for the opportunity to take oral examinations." Oral argument of Norman E. Greenspan, Esq., at March 27, 1990 Hearing, Tr. 4–9.

Counsel for the Debtors argued to Chief Judge Lifland in opposition. The judge then ruled from the bench and denied the Parent Creditors Committee's motion to take oral examinations. It is that order from which the Committee takes the present appeal. It is useful to set forth the argument of Debtors' counsel in its entirety, since her submissions to Chief Judge Lifland facilitate comprehension of what the judge did and did not do in his ruling.

Counsel argued as follows:

Your Honor, I think the best way to describe LTV's reaction to this application is one of bewilderment.

As Your Honor is aware, in response to Mr. Greenspan's Affidavit we have provided Your Honor with information detailing the production that LTV has made in response to specific requests of the Parent Committee.

The Parent Committee had not discussed with anybody prior to being before Your Honor this minute how it wished to proceed other than the filing of this Affidavit, which also had not been discussed with anybody prior to the time we received it.

There is no dispute, I think, that LTV made available anybody available to LTV to discuss these matters on an informal basis. No such interviews have been requested of us.

I am not familiar with what the concern is about the interview which Mr. Greenspan indicated was not productive. No complaint had been made to anybody at LTV about whatever that problem was. It remains, Your Honor, unclear to us why we must have these discussions in front of the Court without any preliminary discussions about what we might or might not be able to do.

It also does not seem to LTV that any showing has been made of any need to take examinations under oath. Everybody has been made available. All books and records have been made available. There is no dispute here as to what the transactions are about. There is no question of credibility, and so we would continue to oppose the taking of examinations under oath of people who are very involved in the plan process and in the reorganization process and other matters at this time when there is no showing of any need for it. Oral argument of Karen Wagner, Esq., *Id.* at 9–10.

Chief Judge Lifland then made his ruling:

I am a little bit concerned, Mr. Greenspan, there is and has arisen before in connection with the discovery request of the Parent Committee a proclivity, it appears to seek overbroad discovery, and yet at the same time there is a clear indication, as confessed by you, of unbridled cooperation.

This is not an issue or an area where there is a stonewalling. I don't know if there is a particular agenda that is being pursued by the Parent Committee in seeking depositions at this point in time when you haven't been precluded from making contact, performing their fiduciary responsibilities by getting information, nobody seems to be holding back on information.

I really don't see the need to burden the estate at this point in time with different

discovery tools when the availability for the information that you seek is clear and not restricted.

I also don't understand if there is this special need. We have had this out in the past. Our local rules provide a wonderful procedure for coming to the Court without formality and utilizing a 13K conference. This was done many times and the results of those 13K conferences have perhaps, because of the Court's involvement, gotten both sides to line up and exchange information or perhaps because LTV has such nice people in their management that rather than hold back they have been generous and forthcoming.

That last remark is slightly cynical because I do firmly believe that the 13K conferences have fostered a spirit of cooperation that seems to exist.

I will deny your application at this point in time. I do not see that it is necessary. As a matter of fact, it would almost appear to be burdensome.

*Id.* at 10–12.

This appeal followed.

### Discussion

■ This Court's appellate jurisdiction is said to lie under 28 U.S.C. § 158(a), which provides:

The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving

To be appealable under the statute, the bankruptcy court's order must be "final." The Second Circuit addressed § 158(a) finality in *BancTexas Dallas, N.A. v. Chateaugay Corp.*, 880 F.2d 1509, 1511 (2d Cir.1989):

Under 28 U.S.C. § 158(a), district courts have jurisdiction to hear appeals from

final orders of the bankruptcy courts. Because bankruptcy proceedings often continue for long periods of time, and discrete claims are often resolved at various times over the course of the proceedings, the concept of finality that has developed in bankruptcy matters is more flexible than in ordinary civil litigation. *See In re Johns–Manville Corp.*, 824 F.2d 176, 179–80 (2d Cir.1987). Some appeals are therefore allowed before the entire bankruptcy is resolved. Of course, not every order of a bankruptcy court is appealable as a final order—only those orders that "finally dispose of *discrete disputes within the larger case*" satisfy the test. *In re Saco Local Development Corp.*, 711 F.2d 441, 444 (1st Cir.1983) (emphasis in original); see also *In re Stable Mews Associates*, 778 F.2d 121, 122 (2d Cir.1985).

In *BancTexas* the Bankruptcy Court had denied a creditor's motion for relief from the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362(a). The creditor appealed under § 158(a) to the district court, which dismissed the appeal on the ground that the bankruptcy court's order was not final. The Second Circuit reversed. Judge Feinberg's opinion stressed that the language as well as the legislative history of § 362(e) of the Bankruptcy Code demonstrated that the denial of relief from an automatic stay was a final appealable order. The statute provides that thirty days after a request for relief from a stay, the stay is terminated with respect to the party in interest making the request unless the bankruptcy court, after notice and hearing, orders the stay continued in effect pending final hearing. § 362(e) specifically provides:

If the hearing under this subsection is a preliminary hearing. ... [a] final hearing shall be commenced not later than thirty days after the conclusion of such preliminary hearing.

Furthermore, bankruptcy rule 4001(a)(2) provides:

The stay of any act against property of the estate under § 362(a) of the Code expires 30 days after a final hearing is

commenced ... unless before that time expires the court denies the motion for relief from the stay or, after notice and a hearing, orders the stay continued pending conclusion of the final hearing.

In *BancTexas*, the Second Circuit characterized the bankruptcy court's ruling on relief from the stay as a final order under § 158(a). On a point particularly pertinent to the case at bar, the court of appeals considered certain special provisions articulated by the bankruptcy court at the hearing; the issue was whether those provisions made the order "non-final." At the hearing Bankruptcy Judge Lifland "agreed to revisit the matter in one year, and required LTV to set aside $20 million 'in recognition of [the] proceeding' then concluding before the bankruptcy court." That provision, in the district court's view, rendered the bankruptcy court's order an "interim compromise," rather than "equivalent to a permanent injunction." The district court "found that the bankruptcy court's order was not a final denial of relief because it left the door open to further modification." 880 F.2d at 1512–13.

The Second Circuit reversed, in view of the particular nature of an application for relief from the automatic stay provision, and the statutory procedures particularly addressing such motions. That this consideration lies at the heart of the court of appeals' opinion appears clearly from the following discussion:

> Although we agree that the bankruptcy court's order was open to modification in one year, we do not believe that this factor transforms an otherwise final order into a non-final order. Because the statute requires that the final hearing commence within 30 days after "the conclusion" of the preliminary hearing, Judge Lifland's reconsideration of the issue in one year cannot properly be the final hearing contemplated by the statute, and cannot make the October 20, 1988 hearing a preliminary hearing for purposes of the statute. It is true that in a non-injunctive bankruptcy context, a judge's statement of intent to reconsider an issue in the relatively near future might be significant in determining

whether the order is final or interlocutory. *See In re Chateaugay Corp.*, 80 B.R. 279, 283 (S.D.N.Y.1987). In view of the applicable statute and rule in this case, however, allowing a year's postponement of further consideration on a motion for relief from the stay to render the order non-appealable would violate congressional intent.

> *Id.* at 1513.

The case at bar is different. If I read Chief Judge Lifland's ruling correctly, particularly in the light of counsel's argument which immediately preceded it, the case at bar is closer to that "non-injunctive bankruptcy context" where the bankruptcy judge's "statement of intent to reconsider an issue in the relatively near future might be significant in determining whether the order is final or interlocutory."

Chief Judge Lifland's intention during his management of this complex case is manifest. He prefers the process of exchange of information to be informal, at least initially, and prefers to "not burden the estate at this point in time with different discovery tools when the availability for the information that you seek is clear and not restricted." Implementing that analysis, Chief Judge Lifland concluded: "I will deny your application at this point in time. I do not see that it is necessary." Tr. 12.

Not the least of the Watergate burglars' crimes is their part in the debasing of the English language by the phrase "at this point in time." By the time the televised Watergate hearings were over, brainwashed viewers were saying "at this point in time" when they used to say "now." If that is all Chief Judge Lifland was saying, his order would arguably be final. Viewing his ruling in context, however, I conclude that he used the phrase "at this point in time" properly, that is to say, "not now but perhaps later." That is consistent with his approach to managing the Committee's efforts to examine into the allegedly fraudulent transfers. The judge appears to share the professed bewilderment of Debtors' counsel that informal interviews be

abandoned, particularly after all pertinent documents had been produced in a spirit of acknowledged cooperation, and counsel for the Committee had expressed dissatisfaction with one interview attempt only in the most conclusory terms.

In short, I do not read Chief Judge Lifland's order as foreclosing a subsequent application by the Parent Creditors' Committee for oral depositions under oath if the Debtors' representatives refuse to appear for interviews, or delay them unduly, or indulge in suspiciously selective recollection, or decline (individually or through counsel) to acknowledge the accuracy of memoranda or notes reflecting the substance of the interviews. Nor do I understand Chief Judge Lifland to be saying that the Committee is foreclosed from renewing its application for oral examinations, once the informal interview alternative has been fully explored, if the Committee can then demonstrate that its important statutory responsibilities cannot be discharged without more formal examination procedures. Because I take that view of the proceedings in the Bankruptcy Court, that court's order lacks the requisite finality to vest this Court with appellate jurisdiction.

■ I appreciate that I have the discretion to grant leave to appeal, even if the order below be characterized as interlocutory. The test would then be whether Chief Judge Lifland's order, refusing to order oral depositions on the present record without prejudice to a later application, constituted an abuse of discretion. I decline to grant leave to appeal from an interlocutory order of that nature.[1]

Accordingly the appeal is dismissed.

It is SO ORDERED.

---

1. Debtors are wrong in suggesting that an interlocutory appeal can never properly lie from a discovery order. *See Herbert v. Lando,* 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). But the district court's order in that case, compelling discovery into the "editorial process" of defendants in a public figure's defamation action, constituted a final adjudication of the point at issue.